### GRIFFIN v. AMERICAN GOLD MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. March 10, 1902.)

#### No. 712.

1. VENDOR AND PURCHASER—ACTION FOR PURCHASE MONEY—DEFENSES.

Plaintiff contracted to sell to defendant's assignor a mining claim, which he had located and to which he had made application for a patent, described in accordance with the survey thereof made by the government surveyor. He deposited a deed in escrow, and agreed to prosecute his application and obtain a final receipt before the purchase money became payable. A portion of the claim as so surveyed overlapped a placer claim owned by the purchaser, and to which it after-

ward received a patent. Thereafter it filed a protest against the issuance of a patent for such portion of plaintiff's entry, on the ground that there was no known lode or vein thereon at the time it was patented under the placer location. This issue was tried and decided by the land department in favor of the protestant, and plaintiff's entry was held for cancellation as to such portion of his claim, which included about one-half its surface area. *Held*, that such determination was conclusive, and, since his contract was entire, and he could not give title to the land sold and described in his deed, he could not maintain an action for the purchase money.

2. MINING CLAIM—CONTEST—ESTOPPEL.
The fact that defendant had contracted to purchase a mining claim from plaintiff, conditioned upon the obtaining of a patent therefor, did not deprive him of the right to contest the allowance of such patent as to a portion of the claim which overlapped a prior claim owned by himself.

In Error to the District Court of the United States for the District of Alaska.

R. F. Lewis, John G. Heid, and Alfred Sutro, for plaintiff in error.
Lorenzo S. B. Sawyer, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This action was commenced November 20, 1893, in the district court for the district of Alaska, by Martin W. Murray against the Nowell Gold Mining Company, to recover $25,-000, with interest, under and by virtue of a written contract entered into August 21, 1891, by and between Murray and a corporation styled "Silver Bow Basin Mining Company." By that contract Murray agreed and covenanted, for the considerations therein stated, to sell to the Silver Bow Company a certain mining lode claim, situated in the Harris mining district of Alaska, called the "Morris G," which the contract declared to be fully described "in the deed of the party of the first part [Murray] to the party of the second part [the Silver Bow Company] of even date herewith, conveying said premises, and also the field notes of the United States deputy surveyor as set forth in the application of the party of the first part for a United States patent to said location known as the 'Morris G,' which application bears date the 13th day of August, 1891." The contract contained a further covenant on the part of Murray "to prosecute said application for a patent in the land office to a final destination [determination], and upon the issuance of a receiver's receipt for said ground on said application for a patent, and upon the payment of the sum of twenty-five thousand dollars as hereinafter set forth, the party of the first part [Murray] hereby covenants and agrees that the deed heretofore mentioned and set forth, which by agreement of the parties is placed in escrow in the hands of A. K. Delaney, shall be forwarded, together with such receiver's receipt, to the commissioner of the general land office at Washington, with any necessary instructions of the party of the first part, to the end that the patent for said Morris G lode may be issued to the party of the second part [the Silver Bow Company]." The agreement on

the part of the Silver Bow Company to pay for the claim thereby agreed to be purchased was as follows:

"Five thousand dollars on the 1st day of June, 1892, and twenty thousand dollars on the 1st day of August, 1892, provided. that on the 1st day of June, 1892, the said party of the first part shall have successfully prosecuted in the land office his application for a patent for said premises, and shall have come into possession under and by virtue of such proceedings in the land office of a receiver's receipt, equivalent to a patent for said claim; but in case the party of the first part shall not have received said receiver's receipt for the 1st of June, 1892, then the whole sum of twenty-five thousand dollars shall be payable on the 1st day of August, 1892, provided, as before, that the party of the first part shall have successfully prosecuted his application for a patent for said premises and obtained said receiver's receipt. And it is further agreed that in case the proceedings upon said application for a patent shall not have been perfected, and the said receiver's receipt issued, by the 1st day of August, 1892, the party of the second part hereby agrees, at any time within one year from said date, to pay the said party of the first part the sum of twenty-five thousand dollars, the full consideration price of the said premises, whenever within that time the said party of the first part shall deliver to the party of the second part such receiver's receipt, together with the deed above mentioned and the said necessary instructions to the general land office, whereby the patent to the said premises may be issued by the general land office to the party of the second part."

And the contract concluded with this clause:

"This agreement is drawn in triplicate, and collateral thereto a deed of the party of the first part, conveying the said premises to the party of the second part, describing said premises by field notes of the United States surveyor, as set forth in said application for patent, and containing the usual covenants of warranty, and which said deed, together with one triplicate of this agreement, is placed in the hands of A. K. Delaney, in escrow, to be disposed of in accordance with the terms of this agreement, or returned to the said party of the first part in case such agreement is not finally perfected and carried out, and one triplicate of this agreement is delivered to each of the parties hereto, respectively."

The complaint alleged, among other things, that on the 14th day of December, 1891, the Silver Bow Company, in consideration of the sum of $5, and of the assumption in writing by the defendant Nowell Gold Mining Company of all the contracts, debts, and obligations of the Silver Bow Company, the latter sold and conveyed to the Nowell Company all of its property, rights, and assets within the district of Alaska, in consideration of which the Nowell Company did, in and by a written agreement, annexed to and made a part of the complaint, assume, among other obligations, the contract of the Silver Bow Company with the plaintiff. Pending the action Frank W. Griffin was substituted as plaintiff, as successor in interest of Murray, and the American Gold Mining Company was likewise substituted as defendant, as successor in interest of the Nowell Gold Mining Company, and the case continued as between these parties, standing in the shoes, respectively, of the original parties to the action. Prior to the substitution of Griffin as plaintiff, an amended complaint was filed by Murray, in which it was alleged, among other things, that:

"Although said defendant has refused and still refuses to pay said sum of twenty-five thousand dollars, or any part thereof, nevertheless during the mining season of 1894 said defendant went upon said Morris G lode claim and took possession of the same, and worked and mined said Morris G lode

claim, and removed therefrom large quantities of earth and gravel contain-ing gold and other precious metals, and still retains undisputed possession of said claim."

The averments last quoted were put in issue by the answer of the American Gold Mining Company to the amended complaint, as well as the allegations in respect to the assumption by the Nowell Gold Mining Company of the obligations imposed on the Silver Bow Company by reason of its agreement to purchase and pay for the Morris G lode claim. The only other defense interposed by the defendant American Gold Mining Company was that on the 30th day of June, 1894, Murray conveyed the Morris G lode claim to the present plaintiff, Griffin, who has ever since remained the owner thereof, and that—

"If it was ever bound, or could be held liable, on the contract between the plaintiff and the Silver Bow Basin Mining Company, yet it says that plain-tiff ought not to have and maintain this suit against it, for that it is not true, as alleged by plaintiff, that he complied with all the terms and condi-tions of said contract, and defendant especially denies said allegation or performance by plaintiff; that in truth and in fact, while under the terms of said contract plaintiff was to obtain a receiver's receipt, and give such instructions and perform such acts as were necessary to enable the Silver Bow Basin Mining Company to obtain a' patent, to about thirteen (13) acres of ground embraced within the exterior limits of the said Morris G lode as described in said contract, yet the receiver's receipt finally given and entry allowed only embraced about six (6) acres of said ground; that the said ground embraced in the exterior boundaries of said Morris G lode claim as described in said contract conflicted with prior valid mineral locations, to wit, with discovery claim, embraced in U. S. surveys Nos. 77, 78, 79, and 80, to the extent of about seven acres, which said prior locations were adjudged by the land department to have the prior and better right to said land so in conflict. The precise extent and nature of said conflict is shown in the plat hereto attached and made a part hereof."

The case was tried with a jury, and a verdict returned for the de-fendant by direction of the court. The assignments of error present the questions hereinafter considered, which are the only ones we deem it necessary to mention.

On the trial the plaintiff offered in evidence the written agree-ment of the Nowell Gold Mining Company, by which for valuable considerations it undertook to assume the obligations of the Silver Bow Basin Mining Company in respect to the purchase of the Mor-ris G lode claim, which agreement was excluded by the court below on objections thereto interposed by the defendant. In that there was manifest error, not only because the alleged making of that agreement was one of the important issues in the case, but also for the reason that it was contemporaneous with, explanatory of, and, indeed, by express reference, was made a part of,'the deed from Mur-ray to the Silver Bow Company, which the court did admit in evi-dence. Whether or not the error so committed demands a reversal of the judgment depends upon the view taken of other questions in the case.

It appeared from the evidence that on the 4th day of October, 1880, the Discovery placer claim was located, by whom does not appear, and that an application for a patent therefor was filed in the local land office October 19, 1888. Meanwhile, to wit, June 4, 1881,

the Morris G lode claim was located by Murray, and so located as to include a portion of the surface of the prior placer location. Notice of the application for a patent for the placer claim was duly posted and published, and, no adverse claim being made, the claimant was on March 14, 1891, permitted to make mineral entry No. 32, embracing lots Nos. 77, 78, 79, and 80 of the government surveys, upon which entry a patent was issued September 18, 1891. Notwithstanding the fact that the Discovery placer claim included about 6.33 acres of what Murray located as the Morris G lode claim and contracted to sell to the Silver Bow Company, he interposed no adverse claim or protest against the application of the placer claimant for a patent therefor. August 13, 1891, Murray filed his application for a patent for the Morris G lode claim, notice of which was published from August 20 to November 12, 1891, during which time the claimant of the Discovery placer claim filed no adverse claim or protest, notwithstanding the fact that the Morris G lode claim, as surveyed, covered 6.33 acres of the ground embraced by lots 77, 78, 79, and 80 of the placer claimant. The result was that Murray was allowed to make mineral entry No. 39 for the Morris G lode claim. But on the 16th day of December, 1891, the Silver Bow Basin Mining Company, patentee of the Discovery placer claim, filed its protest against issuing a patent upon the mineral entry 39 for the Morris G lode claim; the ground alleged being that:

"There is no lode or vein or rock in place bearing the precious metals within the exterior boundaries of said part of said Morris G lode claim which overlaps said lots numbered 77, 78, 79, and 80, as above described, known to protestant, and no vein, lode, or rock in place bearing the precious metals was known at the time the said company, by its grantors, made application for patent for said placer claim."

That question of fact, the evidence showed, was determined in favor of the protestant by the land department, and accordingly Murray's mineral entry 39 was held for cancellation in so far as it conflicted with the prior Discovery placer location, and the subsequent entry and patent of the Morris G lode claim allowed only for about 7 of the 13 acres Murray bound himself to convey. That the determination of such questions of fact by the land department of the government is conclusive upon the courts has been so often decided as to render a citation of the cases unnecessary. There was, therefore, no error on the part of the court below in refusing to submit to the jury, at the request of the plaintiff, the questions:

"(1) Was the Morris G lode or vein in existence at the date of the application for patent for the Discovery placer claims, situated in Silver Bow basin, Alaska? (2) If so, was the Morris G lode or vein known to exist within the boundaries of said Discovery placer mining claims at the date of the application for a United States patent for said Discovery placer claims?"

The contention on the part of the plaintiff in error that he and his predecessors in interest were prevented by the wrongful act of the predecessor in interest of the present defendant from performance of the plaintiff's agreement cannot be sustained. The Silver Bow Company, in contesting the application of the Morris G lode claimant, was put protecting its own prior placer location, and

was under no obligation of any character to stand by and permit the claimant of the subsequent lode location to include therein a part of its ground.  The case, in truth, was one in which the plaintiff below contracted to sell what he did not own and could not convey, and, as the contract was entire, there was nothing left for the trial court to do, as the case was presented, but to instruct the jury to return a verdict for the defendant.  The error first pointed out became immaterial, and the evidence in support of the alleged taking by the defendant of earth and gravel from the lode claim was too indefinite and uncertain, even if material to the action brought.

The judgment is affirmed.