GRIFFIN v. AMERICAN GOLD MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1903.)

No. 712.

1. VENDOR AND PURCHASER—ACTION FOR PURCHASE MONEY—DEFENSES.

Plaintiff contracted to sell to defendant a mining claim, identified in the contract by name and by reference to the government survey thereof, and to a deed which plaintiff made at the same time and deposited in escrow. Plaintiff had made application for a patent, which was pending, and which he agreed to prosecute to a determination, and the purchase money was to be paid on delivery to defendant of the deed and the receiver's final receipt. Plaintiff obtained the receipt, and tendered and demanded performance within the time limited in the contract, and in accordance with its terms, which was refused by defendant. At the time the contract was made, defendant owned another claim, to which

it had applied for a patent, and which was prior in location to plaintiff's,. and overlapped the same; such fact being known to both parties, both claims having been previously surveyed and marked on the ground.. Subsequently defendant, having received its patent, filed a protest against the granting of a patent to plaintiff for that portion of his claim embraced in its own patent, which was sustained. *Held*, that the parties must be presumed to have contracted with reference to the facts which both knew to exist, and that plaintiff had fully complied with the contract on his part when he obtained and tendered the final receipt, and his right to recover the purchase money could not thereafter be defeated by the action of defendant; that, even if the contract required that the receiver's receipt should be equivalent to a patent for the whole claim, defendant could not take advantage of plaintiff's failure to obtain such patent, which was prevented by its own act.

In Error to the District Court of the United States for the First Division of the District of Alaska.

On rehearing. For former opinion, see 114 Fed. 887, 52 C. C. A. 507.

Alfred Sutro and John G. Heid (R. F. Lewis, of counsel), for plaintiff in error.

Lorenzo S. B. Sawyer and J. H. Cobb, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. Upon a rehearing of this cause, the court, after a careful consideration of the terms of the contract involved therein, and the circumstances which attended its execution,. has reached the conclusion that its construction thereof on the former hearing (Griffin v. American Gold Mining Co., 114 Fed. 887, 52 C. C. A. 507) was erroneous. The contract was made between M. W. Murry, the grantor of the plaintiff in error, as the party of the first part, and the Silver Bow Basin Mining Company, the predecessor in interest of the defendant in error, as party of the second part. It provided as follows:

"That the said party of the first part, for and in consideration of the covenants hereinafter set forth, to be performed by the party of the second part, and also in consideration of the sum of twenty-five thousand dollars to be paid to him by the party of the second part, as hereinafter set forth, hereby covenants and agrees with the said party of the second part to sell unto it that certain mining lode claim known as the 'Morris G,' situated in the Harris mining district, in the district of Alaska, for a full description of which reference is hereby made to the deed of the party of the first part to the party of the second part, of even date herewith, conveying said premises, and also the field notes of the United States deputy surveyor as set forth in the application of the party of the first part for a United States patent to said location known as the 'Morris G,' which application bears date the 13th day of August, 1891; and the said party of the first part further covenants and agrees to prosecute said application for a patent in the land office to a final destination, and upon the issuance of a receiver's receipt for said ground on said application for a patent, and upon the payment of the sum of twenty-five thousand dollars as hereinafter set forth, the party of the first part hereby covenants and agrees that the deed heretofore mentioned and set forth, which by agreement of the parties is placed in escrow in the hands of A. K. Delaney, shall be forwarded together with such receiver's receipt to the Commissioner of the General Land Office at Washington, with any necessary instructions of the party of the first part, to the end that the patent for said 'Morris G' lode may be issued to the party of the second part.

"For and in consideration of the covenants hereinbefore set forth, to be

performed by the party of the first part, the party of the second part hereby agrees to purchase of the party of the first part the mining lode claim known as the 'Morris G.,' and pay for the same the sum of twenty-five thousand dollars, as follows, to wit: Five thousand dollars on the 1st day of June, 1892, and twenty thousand dollars on the first day of August, 1892, provided that on the 1st day of June, 1892, the said party of the first part shall have successfully prosecuted in the land office his application for a patent for said premises, and shall have come into possession under and by virtue of such proceedings in the land office of a receiver's receipt, equivalent to a patent for said claim, but in case the party of the first part shall not have received said receiver's receipt for the first of June, 1892, then the whole sum of twenty-five thousand dollars shall be payable on the first day of August, 1892, provided as before that the party of the first part shall have successfully prosecuted his application for a patent for said premises and obtained said receiver's receipt. And it is further agreed that in case the proceedings upon said application for a patent shall not have been perfected and the said receiver's receipt issued by the 1st day of August, 1892, the party of the second part hereby agrees at any time within one year from said date to pay the said party of the first part the sum of twenty-five thousand dollars, the full consideration price of the said premises, whenever within that time the said party of the first part shall deliver to the party of the second part such receiver's receipt, together with the deed above mentioned and the said necessary instructions to the General Land Office, whereby the patent to the said premises may be issued by the General Land Office to the party of the second part."

The defendant in error, when it became the successor in interest of the Silver Bow Basin Mining Company, assumed all its obligations under the contract.

It will be seen that by this contract the purchase money for the mining claim was to become due in installments, of which $5,000 was to be paid on June 1, 1892, and $20,000 on the 1st day of the following August, provided that by June 1st a receiver's receipt should have been issued for said mining claim to the party of the first part, but with the further stipulation that if the receiver's receipt were obtained at any time within one year from August 1, 1892, then the whole sum was to be due and payable upon the delivery of the receiver's receipt, together with a deed. This is the substance of the contract, and it is not altered or varied by the recital in the contract that a receiver's receipt is equivalent to a patent, nor by the further provision that the party of the first part shall deliver with the deed the necessary instructions to the General Land Office to secure a patent. There is no covenant that the party of the first part shall obtain a patent to the whole claim, nor is it stipulated that the payment of the purchase money shall be conditioned upon his right to such a patent, or the final issuance thereof. This contract was made on August 21, 1891. The admitted facts are that on June 4, 1881, Murry had located the Morris G. lode-mining claim; that on August 13, 1891, he filed his application for a patent; that on May 12, 1892, he received a receiver's receipt therefor, and for the whole of the claim as it is described in the contract; that on June 1, 1892, he tendered to the defendant in error the receiver's receipt, and demanded payment of the sum of $5,000, according to the contract. Murry had then complied in all respects with the provisions of the agreement. He had within the time limited in the contract obtained the receiver's receipt, and he became entitled to receive the

first payment of the purchase money. It cannot be disputed that on that date a right of action matured in his favor for the recovery of the installment of the money so agreed to be paid him. On August 1st of that year he still had the receiver's receipt, and there was due him under the contract the remainder of the purchase money. He could then have brought an action for the recovery of the whole thereof. No defense could have been made to his right of action. The defense which was subsequently made, and which the trial court held sufficient to justify an instruction to the jury to return a verdict for the defendant in error, was the fact that the defendant in error some years later had successfully prosecuted a contest against Murry's application for a patent to the lode .claim, and had set up against the issuance thereof the fact that it owned a conflicting placer claim which had been located on October 4, 1880, and which was therefore prior in time to the location of the lode claim, and for which it had received a patent. This protest was filed on December 16, 1891. It asserted an adverse claim to 6.33 acres of the ground which was included in the Morris G. lode claim. Upon the issues presented by this protest, the General Land Office held the patent to the Morris G. lode claim for cancellation, as to the portion thereof in conflict with the placer claim. It was shown on behalf of the plaintiff in error that the Morris G. lode claim was surveyed by private survey in 1885 and 1886, that in 1888 an official survey was made, and that in both surveys the corners were placed at the same points, and were well established and marked, and visible on the ground. In view of these considerations, we hold that Murry fully complied with the terms of the contract, and thereby became entitled to recover the stipulated purchase money. But if, indeed, there were a breach of the contract on his part, by his failure to obtain a receiver's receipt, which was in fact equivalent to a patent to the whole claim, it is clear that he was not in default in that respect, for the performance was prevented by the willful act of the other party to the agreement. The conduct of one party to a contract, which prevents the other from performing his part, is an excuse for nonperformance. United States v. Peck, 102 U. S. 64, 26 L. Ed. 46; Marshall v. Craig, 1 Bibb, 379, 4 Am. Dec. 647; Williams v. United States Bank, 2 Pet. 96, 7 L. Ed. 360; Hotham v. East India Co., 1 Durnf. & East. 638.

A further observation concerning this contract, which seems to us unanswerable, is that in the light of the surrounding circumstances, which may properly be adverted to, the real subject of the contract—that which the one party agreed to sell, and the other party agreed to buy—was the Morris G. lode-mining claim, less that portion thereof which was covered by the prior placer claim. At the time of making the contract the Silver Bow Basin Mining Company, the grantor of the defendant in error, not only well knew the boundaries of its placer claim, and knew that it owned the same, and that the location of that claim was prior in point of time to the location of the Morris G. lode claim, but it knew, also, that at the very time of making the contract its application had been made for a patent to the placer claim, and notice had been published thereof, and the time for objecting to or contesting the same had long since expired, and that

the application and proceedings thereon were then about to culmi-
nate in the issuance of a patent, which in fact was issued in less than
30 days from that time. It is fairly to be inferred from these facts,
and from the terms of the contract, that the predecessor of the de-
fendant in error was well aware of its superior right and title to the
placer claim, and knew that that claim overlapped nearly one-half
of the Morris G. lode claim, and that nevertheless it was willing to
and did contract and obligate itself to pay for the Morris G. lode
claim, as it stood, subject to such overlap, the sum of $25,000, pro-
vided that the owner of the latter claim should within the stipulated
time obtain a receiver's receipt therefor. In other words, the sub-
ject of the contract was the Morris G. lode claim, overlapped as it was
by the prior placer claim; and the purpose of describing the lode
claim by metes and bounds and reciting its acreage was to identify
it, and not to indicate that it was of the essence of the contract that
Murry should obtain a patent to the whole area therein described.
In substance, the mining company said to Murry: "We have title to
6⅓ acres of your lode-mining claim, and possess, therefore, if we
were disposed to avail ourselves of it, the sure means of defeating
to that extent your application for patent. Nevertheless, if you will
proceed and obtain a receiver's receipt for your claim as it stands,
we will pay you for it $25,000." If the mining company had re-
frained from interfering, and had permitted Murry to proceed as the
contract contemplated, there can be no doubt that he would have ob-
tained a patent for the whole of his claim. Instead of permitting him
to do this, it interfered, opposed the issuance of patent for the whole
claim, and obtained for itself a patent for nearly one-half the surface
thereof. How can the defendant in error, therefore, contend that
it has been injured? What has it lost by the breach, if breach there
were, of the strict letter of the contract? It already owned a por-
tion of the ground covered by the Morris G. lode claim, and it was
tendered a deed by Murry, upon the acceptance of which it would
have obtained and possessed in fee simple the whole thereof. It has,
or could have, obtained title to all that the contract called for, and
we know of no legal ground upon which it can be absolved from paying
the full sum which it agreed to pay therefor.

The judgment of the District Court is reversed, and the cause is
remanded for further proceedings not inconsistent with the foregoing
opinion.