## STEPHENS VS. MARSHALL.

1. MILL DAM LAW — EFFECT OF REPEAL. — Under the mill dam law of 1840, the right of the mill owner to maintain his dam and of the land owner to compensation for the lands so flowed by it, became fixed and vested by the flowing of the land beyond the power of the legislature to take them away or to remit the parties to their common law rights and remedies by a repeal of the law. Contra *Pratt v. Brown*, 3 Wis., 603.
2. SAME. — The compensation of the land owner in such a case can be obtained under the provisions of the act which as to such cases is irrepealable and hence an action on the case for damages sustained by such flowing after the repeal of the mill dam act of 1840, cannot be maintained. Contra *Pratt v. Brown*, 3 Wis., 603.

(3 Chand., 222.)

ERROR to the County Court for *Sauk* County.

Action on the case for flowing certain lands owned by the plaintiff through which there passed a running stream, by means of a mill dam erected thereon by the defendant. Plea not guilty. At the trial before the court without a jury, it appeared that about twenty-five acres of plaintiff's lands were overflowed by means of the dam in question, and that the damages were from $25 to $500. The dam was erected under what was known as the "mill dam act" of 1840, and was afterwards swept out by flood and immediately rebuilt by defendant, and it was claimed that by the repeal of the mill dam act by an act which took effect January 2, 1850, before the commencement of this suit, that therefore the defendant was liable for such injury as at common law; and on behalf of the defendant it was contended that the right which he had acquired under the mill dam act of 1840, to maintain the dam was a vested right and could not be taken away by a repeal of the act. Finding and judgment for the defendant, and the plaintiff brought error.

*Collins, Smith & Tappan*, for the plaintiff in error, claimed that by the repeal of the mill dam act the defendant lost all rights acquired under it, and was thereafter liable for main-

taining the dam and flowing plaintiff's land, as at common law ; that the rights which he acquired under the mill dam act were not in the nature of a contract and were not vested rights ; that the mill dam act having been repealed the land owner could no longer proceed under it, but was remitted to his rights and remedies as at common law, and cited *Butler v. Palmer*, 1 Hill, 324 ; 5 Cranch, 281 ; 6 id., 329 ; 4 Dallas, 372 ; 1 Bin., 601 ; 8 Watts, 517 ; 1 Blackf., 451 ; *Key v. Goodwin*, 4 Moore & Payne, 341 ; 4 Wend., 410 ; 6 id., 526 ; *Newcomb v. Smith*, 2 Pin., 131 ; 4 Wheat., 518 ; *Fletcher v. Peck*, 6 Cranch, 87 ; *Territt v. Taylor*, 9 id., 43 ; 1 Kent Com., 413–420 ; 6 Wend., 210, 551–554.

*C. C. Remington* and *J. H. Knowlton*, for the defendant in error, cited 6 Rand., 345 ; 1 Aik., 121 ; Smith's Com., §§ 375, 377 ; 1 Bay., 179 ; 2 Cranch, 272 ; 12 Serg. & R., 363, 372 ; 4 id., 401 ; 2 Gallis, 105 ; 8 Wheat., 493 ; 1 N. H., 199 ; 2 Greenlf., 28 ; 1 Blackf., 220 ; Smith's Com., §§ 149–151 ; 5 Bing., 177, 489 ; 7 Cranch, 164 ; 2 Hill, 238 ; 7 Johns., 499 ; 11 Mass., 364 ; 11 Wend., 667 ; *Paulet v. Sandgate*, 19 Vt., 621 ; 5 Mass., 326.

HUBBELL, C. J.  The constitutionality of the mill dam law of 1840 was established by this court in *Newcomb v. Smith*, 2 Pin., 131.  The law, however, was repealed by an act which took effect on the 2d day of January, 1850 ; and the present case presents a question growing out of the repeal.  For reasons unexplained, the legislature, on abrogating that important and peculiar statute, made no provision for the rights of persons whose property had been taken or invested in pursuance of its authority.  To the general saving clause found in the revised statutes (sec. 2, p. 757), or to the provision in the constitution of the United States, prohibiting the states from passing any law, impairing the obligation of contracts, they must look for protection.

The facts of this case are as follows :  The defendant in er-

Stephens vs. Marshall.

ror, some time in the year 1849, erected on his own lands a saw mill and dam, by means of which the waters of " Dell Creek " were caused to flow back and cover the lands of the plaintiff in error. No question is made, but that this erection and the consequent flowings, were authorized by law, then in existence. In January, 1850, and after the repeal of the act of 1840, a portion of the same was carried away by a flood ; and the water fell to the ordinary limits of the channel of the creek. As soon afterwards as it became practicable, the defendant in error repaired his dam, and again caused the water to flow upon the land of the plaintiff in error, as in the first instance. For this act, suit was brought in the county court of Sauk county, by an action on the case.

The county court held the action not maintainable; and to reverse that decision, error is brought to this court. Previous to the repeal of the act of 1840, the plaintiff in error had instituted no proceedings to recover compensation for the land overflowed. It is contended now that the repeal of that act, abrogated all the rights of the parties under it, and restored all their common law rights and liabilities. A majority of this court think otherwise, for the reasons which I shall proceed briefly to state. The general " saving clause " in the revised statutes before referred to, is as follows : " The repeal of the acts mentioned in the preceding section " (including the act in question) " shall not affect any act done, or right accrued or established, or any proceeding, suit or prosecution had or commenced, in any civil case, previous to the time when such repeal shall take effect. But every such act, right and proceeding, shall remain as valid and effectual as if the provision, so repealed, had remained in force."

It is clear that the defendant in error must show some " right accrued or established," previous to January 1, 1850, or he cannot set up the repealed act to justify a subsequent flowing. It becomes necessary to inquire then, what were the rights of the parties prior to that date ? The defendant in error, in

1849, had erected his mill and dam, and caused the flowing of the lands in question. This act was then lawful. He had lawfully expended his labor and means on his own land, and had lawfully taken possession of, and injured the land of the plaintiff in error, by virtue of the act of 1840. But in consequence of these several acts and proceedings, has neither of the parties acquired rights? The legislature could not delegate to the mill owner the power to exercise the right of eminent domain, without providing for compensation to the land owner. The fourth section of the act provides, that "any person *whose land is overflowed or otherwise injured by such dam* may obtain compensation therefor, upon his complaint before the district court," etc. There must be a *time* when this right to compensation accrues, or is established. Is it *immediate and consequent upon the act of overflowing*, or is it dependent upon the recovery of a judgment, in the manner provided by the act? If the latter, then the rights of the mill owner, had there been no repeal, must have remained suspended forever, or until the owner of the land overflowed had chosen to prosecute and recover judgment. This is not a sound or sensible construction of the act. The intention of the legislature was, to favor the interests of mill owners and make investments in that species of property, desirable and safe. And for that purpose (whether wisely or not, is not a question here) it gave, absolutely, the right to cause the overflowing, subject to the conditions and liabilities specified in the act. And those conditions and liabilities, when the flowing did take place, secured just as absolutely, the corresponding rights of him whose land was overflowed. The moment the flowing took place, the land was appropriated. It was " taken for public use," and the right to compensation was established. Such were the rights of the parties in this case, under the law as it existed in 1849. The law, and the acts of the defendant in error, in pursuance of its provisions, constituted a contract between him and the plaintiff in error, and between the state and each of them. No act of either party

could deprive the other of his vested rights under this contract; nor could the repeal of the law by the legislature, abrogate or impair its obligations.

The defendant in error, by his acts in 1849, had acquired and established a right, not only to " erect," but to " *maintain* a watermill and a dam to raise water for working it," in the language of the act of 1840. And if to maintain it, then to repair or replace it, in case it should be damaged or carried away by floods, or otherwise, as occasion might require. The rights of the parties having been once vested and established, remain; and so much of the law remains as may be necessary to enforce or preserve them. The proceedings of the plaintiff in error, to obtain compensation for his land overflowed or injured, by the present action, is erroneous. He must take his remedy under the statute.

Some stress was laid, on argument, upon the want of *mutuality* in the alleged contract between the parties. And it was assumed, not only, that the plaintiff in error was a party to it by compulsion, but that by failing to commence an action for his compensation, prior to the repeal of the act, he had lost all remedy, unless restored to his common law rights. That he was a party by compulsion does not alter the case. This occurs in every instance where the property of individuals is taken for public use by railroad companies or other bodies. But the contract rights of the parties are not less effectually secured in law, than if the obligations were voluntarily assumed. The remaining part of the obligation is disposed of by the views already expressed.

Some importance was also attached to the apparent absence of judicial decisions directly sustaining the main point in this case, to wit: the time when the respective rights of parties became fixed and established. When principle is clear, authority is of less consequence. The power of the legislature to abrogate grants or franchises, after private rights have become established under them, has not been asserted since the *Dartmouth*

*College Case.*  The general principle is settled by authority. But this case presents a new class of facts, and the question is, whether, in fact, any rights were established when the repealing act took effect.  This point has been discussed and settled, upon the general scope and purpose of the act, the circumstances and relations of the parties, and the rights, naturally and necessarily arising therefrom.  Authority is not, however, entirely wanting.  In the case of *People v. Supervisors of Westchester,* 4 Barb., 64, nearly the same question arose. By an act passed in 1845, commissioners were appointed to alter and improve a road in Westchester county, and provision was made that " the damages sustained by any owner or occupant of land, by reason of any such alteration or changes of routes, shall be ascertained, levied and paid." And further provision was made to ascertain the damages by the assessment of a jury.  During that year the road was laid out, and the damages sustained by the relators were duly assessed by a jury in the manner provided by the act.

But the board of supervisors refused to order and direct such damages to be raised and paid to the relators; and in 1846, the legislature repealed the act.  In the mean time, the lands of the relators had been thrown open to public use.  The court held that the right of the relators to the damages, as found by the jury, could not be defeated by the subsequent act of the legislature.  And the case turned principally upon that point.  But the learned judge who delivered the opinion of court discusses another point, and intimates that the decision might have rested upon that, had it been necessary.  " The law of 1845," says he, " authorized the agents of the state to take property of the relators, and provided a constitutional compensation. It was equivalent to an agreement on the part of the state to take as much of the property as might be necessary for the public use, and to pay the owners such damages as should be assessed by a jury.  The assent of the owners is compelled in which respect it differs from a contract between individuals.

The transaction is in the nature of an executory contract forced upon the relators by the state. Before any further action, the law might have been repealed, and things would have been *in statu quo;* but as soon as the commissioners proceeded to take the land, a consideration passed, rights accrued, and the contract became sacred in the view of the federal constitution. The legislature says to the owners, " we will take your land and pay you for it."

" They may change their intentions before the land is taken ; but, after the land is taken, the contract is so far executed as to be irrepealable as to those whose rights are affected." This is a clear and sensible exposition of the very principle decided in the present case. Again, in *Harrington v. The County Commissioners of Berkshire*, 22 Pick., 263, Chief Justice SHAW says, " when the highway is once completely established, and the damages to the land once settled by the modes pointed out by the law, the right of the public to a perpetual easement, etc., *becomes complete*, and the right of the owner to his damages or compensation for the lien or qualified right acquired by the public in his land *becomes vested*." In both of these cases, the duty of assessing the damages was assumed by the state upon taking the land for public use. And it might be well urged, that the public acquired no right in the land until the damages were actually assessed and liquidated, or paid. But in the case before us the right to recover the compensation is devolved upon the owner of the land after it is overflowed or injured. There is reason why that right should become perfect and absolute in him as soon as his land is so taken. And there is yet stronger reason why such act of taking should vest in the mill owner his right to hold and use it. Before the latter can exercise the act of taking, he must erect his mill and dam, and make every expenditure requisite for the complete and permanent enjoyment of the legislative grant. On his part, the contract is completely executed, and so far as it depended on his own volition ; and his rights, as well as his liabilities, under

it, ought to be alike irrepealable. This court cannot permit the monstrous injustice which would follow from the act of a repeal, under any other view of the case than that which has been taken.

The judgment of the county court is affirmed, with costs.