## FISHER vs. HORICON IRON & MAN. CO.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard October 27, 1859.]                    [Decided January 4, 1860.

### Constitutional Law—Corporations—Mill Dams.

When the Supreme Court of the state had decided that the "act concerning mills and mill dams," was constitutional, and rights and interests have grown up and become vested under the law as then construed by the court, the court will now adhere to that ruling, although all its members may be of opinion, if it were a new question, that the decision should have been against the constitutionality of the act.

A corporation is a person within the meaning of the mill dam act, and entitled to the rights granted under its provisions, as a franchise, and can claim the protection of the act.

The case of *Newcomb vs. Smith*, 1 Chand., 71, considered and followed.

This was an action commenced by Lucius G. Fisher against the Horicon Iron and Manufacting Company, for damages in the construction of a dam across the Rock river at Horicon, whereby the waters of the river were made to overflow five hundred acres of lands of the plaintiff. The answer of the defendant set up as a defense: 1. The act to authorize A. G. Ellis and others to erect a dam at the place where this is erected, approved March 9, 1839. 2. The " act in relation to mills and mill dams," approved January 13, 1840. 3. The " act to incorporate the Horicon Iron and Manufacturing Company," approved March 15, 1854; by all of which the defendant was authorized to maintain the dam and to flood the land in question. That at the time of the passage of the several acts, and the construction of the dam, and the overflowing of the same, the lands belonged to the United States, or to the state of Wisconsin, as swamp and overflowed lands. That they were overflowed at the time the plaintiff purchased them; and that he had never demanded compensation for the damages. To this answer the plaintiff demurred generally, and the court sustained the demurrer; from which the defendant took this appeal.

Fisher vs. Horicon Iron & Man. Co.

*E. G. Ryan*, for the appellant, relied upon the mill dam act. *Pratt ss. Brown*, 3 Wis. 603; *Newcomb vs. Smith*, 1 Chand., 71; *Stoughton vs. The State*, 5 Wis., 291; *Dick vs. Webster*, 6 Wis., 481; *Bonaparte vs. Cam. & Amboy R. R. Co.*, Baldwin, 205.

*Mat. H. Carpenter*, for the respondent, cited 1 Bl. Com. 139; 2 Kent. Com., 399; *Gardner vs. Newburgh*, 2 J. C. R., 161; *Shepherdson vs. Mil., B. R. R.*, 6 Wis., 613; *Thien vs. Vœgtlander*, 3 id., 461; *Newcomb vs. Smith*, 1 Chand., 71; *Stevens vs. Marshall*, 3 id., 222; *Pratt vs. Brown*, 3 Wis., 603; *Cushman vs. Smith*, 34 Me., 277.

*By the Court*, COLE, J.   The principal question discussed by counsel in this case was, the constitutionality of the law commonly called the mill dam act.  If that law, and the special acts referred to in the answer are assumed to be constitutional, it would seem to follow, as a necessary consequence, that this action cannot be maintained.   For these statutes expressly take away the common law remedy for damages occasioned by the erection of dams, and flowage of land, and substitute a statutory remedy, provided in the acts themselves. Hence the main question, which we were invited to consider, is, the constitutionality of the mill dam law.   This question we cannot regard as open for investigation and discussion at the present time.   It was fully and carefully considered by the supreme court, under its former organization, in the case of *Newcomb vs. Smith*, 1 Chand., 71, and the constitutionality of the law affirmed.

In the case of *Stevens vs. Marshall*, 3 Chand., 222, which brought up for review questions growing out of the repeal of the mill dam law, and the rights of parties acquired under it, the same court referred to the decision of *Newcomb vs. Smith*, as establishing the constitutionaity of the law, and adhere to the construction there given to it.   In the case of *Pratt vs. Brown*, 3 Wis., 603, this court, without passing directly upon

the constitutionality of the law, overruled the case of *Stevens vs. Marshall,* as to the effect of the repeal of the law, deciding that the act was at all times subject to repeal; that the rights of those holding under it continued no longer than the act itself, and that the right to overflow the land of another did not vest in perpetuity in the mill dam owner. But as the mill dam law had been repealed, the case did not call for any adjudication upon its constitutionality, and none was had. In 1857, the legislature re-enacted the law, and the appellant claims the protection of its provisions, as well as of the special enactments set up in the answer.

We are free to confess that if the question as to the constitutionality of the mill dam law were now for the first time presented to this court, and we were not embarrassed by former adjudications upon it, we should doubtless come to a different conclusion upon the question, from that arrived at by the majority of the court in *Newcomb vs. Smith.* It does appear to us to be going a great length to say that land which is used for the purpose of overflowage by a mill dam is appropriated to a " public use," in the proper and just sense of those words; nor does the law seem to provide the constitutional compensation for the land thus taken and appropriated, which it should. The only ground upon which the taking of the property can be justified is, that mills are a great public convenience, almost a necessity; and that every person or corporation which avails itself of the franchise given by the act, must take it with the resultant duty of operating the mill for the public, or any individual. Such undoubtedly would be the construction given this law, otherwise it could not be sustained for a moment. We make these remarks not for the purpose of provoking discussion, but in justice to our views, and to indicate the serious objections which we think exist to the law, while at the same time we state a few reasons

which constrain us to adhere to the decision already made upon it.

The case of *Newcomb vs. Smith* was decided at the January term, 1849. Since then, it is fair to assume, large amounts of capital have been invested, and most important rights acquired in mills and water powers, under the impression that the decision in *Newcomb vs. Smith* would be adhered to by the courts of this state, and that the power of the legislature to pass a mill dam law, and other similar enactments, would not be denied by them, when called in question in future controversies. And, although the period has been comparatively brief since the case of *Newcomb vs. Smith* was decided, yet we all know that within that time enterprising towns and flourishing villages have grown up, whose wealth and prosperity are mainly dependent upon their hydraulic power, and whose business relations and industrial resources would be seriously affected, if we were now to overrule that case. Considerations of this nature, relating to questions of property acquired under the belief that a former decision was correct, cannot be disregarded, when we are called upon to set such decision aside. The rule *stare decisis,* has great force in such a state of things, and emphatically applies. We do not over look the fact that the mill dam law of 1840 was repealed in January, 1850. As already observed, the law has since been re-enacted, while various laws have been passed by the legislature from time to time, authorizing companies and individals to keep up and maintain dams, which special acts contain provisions substantially like those in the old mill dam law.

The appellants, in their answer, set up and rely upon the act of March 9th, 1839, Sess. Laws, 1838–9, p. 98, authorizing the persons therein named to erect a dam at the point where the dam complained of, was in fact erected, as well as the act of incorporation, chap. 133, p. 186, Private Laws, 1854,

authorizing them to purchase and maintain this dam, then erected, and providing a remedy in the event of the dam causing the water to flow upon lands other than those belonging to the company. Section 7. This shows what legislation has been had, and what transactions have taken place on the strength of the former decision in *Newcomb vs. Smith,* and other like cases, might be given.

We are now asked to depart from that decision. Ought we to do it? I think not. It is the duty of this branch of the government to pass finally upon the construction of a law, and determine whether the legislature in its action has transcended its constitutional limits, and the community has a right to expect, with confidence, we will adhere to decisions made after full argument and upon due consideration. The members of the court may change totally every six years, and if each change in the organization produces a change in the decisions, and a different construction of laws, under which important rights and interests have become vested, it is easy to see that the consequences will be most pernicious. For these and other reasons which might be given, we decline to reconsider the constitutionality of the mill dam law.

An objection was taken, that the appellant, being a corporation and not a " person," within the meaning of the mill dam law, was not entitled to the franchises and could not claim the protection of this act. If this construction of the general law, chap. 56, R. S., 1859, were sound, and we do not think it is, still, the objection would fail when applied to the act of incorporation, which distinctly authorizes the appellant to purchase and maintain this dam.

The conclusion at which we have arrived is, that the answer does state facts sufficient to constitute a defense to the action, and therefore the demurrer to the same was improperly sustained. *Thien vs. Vœgtlander,* 3 Wis., 461.

The order of the circuit court sustaining the demurrer is reversed and the cause remanded for further proceedings.