(February 29, 1904.)

## WALLING v. BOWN.

[76 Pac. 318.]

Stare Decisis.

    1. When the beneficial results to be obtained by a departure from the construction and interpretation placed by this court upon a constitutional or statutory provision will not greatly exceed the disastrous and evil effects likely to flow therefrom, the court will decline to reopen those questions where rights and interests have become settled under such decisions, and they have been acquiesced in by the legislature, and the people for any reasonable period of time.

            (Syllabus by the court.)

APPEAL from District Court in and for Elmore County. Honorable Lyttleton Price, Judge.

Action by plaintiff for statutory damages. Judgment for plaintiff and defendant appeals. Affirmed.

Rice & Thompson and Wyman & Wyman, for Appellant.

The rule of *stare decisis,* as we understand it, is as follows: Where a court of final resort has laid down a rule which becomes a law of property and under which property rights have been acquired, it ought not, except upon grave consideration, to change that rule in any subsequent action to the injury of any person who has relied upon it and acquired rights under it. (*Parke v. Boulware et al., ante,* p. 225, 73 Pac. 19.) It is the duty of the court to reverse all erroneous decisions where it can be done without injury to property rights which have been acquired in reliance upon the prior decision. Where the court finds it has erroneously construed the constitution, it will always return to a correct interpretation thereof. (23 Am. & Eng. Ency. of Law, 36; *Hart v. Burnett,* 15 Cal. 530, 600-602; *Houghton v. Austin,* 47 Cal. 646 (667-669); *San Francisco v. Spring Valley W. W.,* 48 Cal. 493 (syllabus); *Willis v. Owen,* 43 Tex. 48.)

Daniel McLaughlin and Hawley & Puckett, for Respondent.

As stated by counsel for appellant, the facts of the case were fully understood and admitted by all of the parties to the record, and have not at any time been disputed. The question presented to this court is one of law exclusively. The contention of appellant's counsel throughout their brief in its entirety is that sections 1210 and 1211 of the Revised Statutes of this state, commonly known as the two-mile limit law, is unconstitutional. Their argument would certainly be interesting, and very likely instructive as well, were the question herein involved presented for the first time to this court for decision; but in view of the fact that upon two other occasions this court has passed upon the constitutionality of the sections of the statute in question, after full argument by able counsel, we are hardly called upon, we apprehend, to seriously consider the positions taken by appellants in their brief. (*Sifers v. Johnson,* 7 Idaho, 798, 97 Am. St. Rep. 271, 65 Pac. 709, 54 L. R. A. 785; *Sweet v. Ballentine,* 8 Idaho, 431, 69 Pac. 995.) The questions heretofore decided were constitutional questions, and while courts of last resort have always been averse to overruling former decisions of any kind, it has always been held

that a constitutional question, once decided, should not be reconsidered, even if the court believed that an error had been committed in the first instance. When a rule has been once deliberately adopted and declared, it ought not to be disturbed, unless by a court of appeals or review, and never by the same court, except for very cogent reasons and upon a clear manifestation of error; and if the practice were otherwise, it would leave us in a state of perplexing uncertainty as to the law. (1 Kent's Commentaries, 475, 476; *Goodtitle v. Otway,* 7 Term Rep. 419; *Butler v. Duncombe,* 1 P. Wms. 352; *Fletcher v. Lord Sandes,* 3 Bing. 588; *Selby v. Bardons,* 3 Barn. & Adol. 17; *Giblin v. Gordon,* 6 Cal. 416; *Welch v. Sullivan,* 8 Cal. 165; *Piercy v. Sabin,* 10 Cal. 30, 70 Am. Dec. 692; *Clark v. Troy,* 20 Cal. 224; *Pioche v. Paul,* 22 Cal. 109; *Hihn v. Courtis,* 31 Cal. 401; *Vassault v. Austin,* 36 Cal. 696; *Smith v. McDonald,* 42 Cal. 484; *Lindsay v. Lindsay,* 47 Ind. 286; *Day v. Munson,* 14 Ohio St. 488; *Boon v. Bowers,* 30 Miss. 256, 64 Am. Dec. 159; *Emerson v. Atwater,* 7 Mich. 23; *Reed v. Ownby,* 44 Mo. 206; *Kneeland v. Milwaukee,* 15 Wis. 691; *Willis v. Owen,* 43 Tex. 48; *Seale v. Mitchell,* 5 Cal. 403; *People ex rel. Attorney General v. Alturas Co.,* 6 Idaho, 418, 55 Pac. 1067, 44 L. R. A. 122; *Parker v. Pomeroy,* 2 Wis. 112; *State v. Silver,* 82 Iowa, 714, 47 N. W. 772; *Amoskeag Mfg. Co. v. Goodsale,* 62 N. H. 66; *State v. Stout,* 61 Ind. 143; *Brown v. Eagle Creek etc. Co.,* 78 Ind. 421; *Commonwealth v. National Oil Co.,* 157 Pa. St. 516, 27 Atl. 374; *Commonwealth v. Mill Creek Coal Co.,* 157 Pa. St. 524, 27 Atl. 375.)

· AILSHIE, J.—This case was here for consideration once before (*Walling v. Bown, ante,* p. 184, 72 Pac. 960), and was remanded for further proceedings in accordance with the views there expressed. After the *remittitur* was sent down the plaintiff was allowed to file an amended complaint, to which the defendant demurred. The demurrer was overruled and defendant failed to answer or make any further appearance, and such further proceedings were had on the part of the plaintiff, that, thereafter, a judgment was duly entered in favor of plaintiff. Defendant has appealed from the judgment which brings up the judgment-roll alone for our consideration. The transcript apparently contains a history of the case from its inception in

the justice's court, but the only matters properly here for our consideration are the amended complaint, demurrer, order overruling demurrer and judgment. (Rev. Stats., sec. 4456.) The record contains no certificate under sections 4819 and 4821, showing that any other papers were used on the hearing in the trial court. The question raised by the appeal is the constitutionality of sections 1210 and 1211 of the Revised Statutes, commonly known in this state as the "two-mile limit law."

Appellant in his brief says: "That the facts of the case were fully understood and admitted by all the parties to the record. There never has been at any time any dispute as to what the evidence shows. The question has always been exclusively one of law. . . . . It will be seen that the admitted facts bring this action strictly within the terms of the statute."

Respondent refers to this statement contained in appellant's brief and affirms and reiterates it, and, in answer to the questions raised, cites *Sifers v. Johnson,* 7 Idaho, 798, 97 Am. St. Rep. 271, 65 Pac. 709, 54 L. R. A. 785, and *Sweet v. Ballentine,* 8 Idaho, 431, 69 Pac. 995, both from this court, contending that these decisions have become the law of the state on the subject matter treated therein.

The issues, therefore, discussed by the respective parties on this appeal are these: Appellant urges the unconstitutionality of the two sections of the statute. Respondent relies on the doctrine of *stare decisis.* The latter proposition demands our attention first, and if applicable here, precludes our consideration of the former.

It is well enough to say here and now that while the personnel of this court has changed since the decisions above cited were announced, the principles of law have not changed, and we shall endeavor to apply them as they appear to us.

Now, to our first inquiry: The doctrine of *stare decisis* is founded largely upon expediency and sound principles of public policy. (23 Am. & Eng. Ency. of Law, 1st ed., 24.) It seems to be generally conceded that where the beneficial results to be obtained by a departure from the construction and interpretation placed by a court of last resort upon a constitutional or statutory provision will not greatly exceed the disastrous and evil effects likely to flow therefrom, courts should refuse to reopen

such questions. This is the position which was taken by our supreme court in *People v. Alturas County,* 6 Idaho, 418, 55 Pac. 1067, 44 L. R. A. 122, where it was said in reference to a former decision holding a legislative act valid: "No good would be accomplished by overruling that decision, but much evil and confusion would result therefrom. Whether that decision was right or not, public policy and sound legal principle demand that we now adhere to it, and regard that question as a scaled book which is no longer open to public scrutiny."

The reasons for this rule are illustrated in a practical way by the supreme court of Wisconsin in *Fisher v. Horicon etc. Mfg. Co.,* 10 Wis. 355, where it is said: "It is the duty of this branch of the government to pass finally upon the construction of a law, and determine whether the legislature in its action has transcended its constitutional limits, and the community has a right to expect, with confidence, we will adhere to decisions made after full argument and upon due consideration. The members of the court may change totally every six years, and if each change in the organization produces a change in the decisions, and a different construction of laws, under which important rights and interests have become vested, it is easy to see that the consequences will be most pernicious."

Following these reasons for invoking the rule here, let us examine the conditions now confronting us and determine whether, under the recognized and established rules of law, we would be justified in opening the question as to the constitutionality of these statutes for an original investigation and determination.

Sections 1210 and 1211 have been on the statute books of the territory and state of Idaho since 1875. In June, 1901, they were construed and held constitutional by this court in *Sifers v. Johnson, supra.* In June, 1902, they were again considered and held valid and enforceable by the same court in *Sweet v. Ballentine.* In August, 1902, both political parties of the state met in conventions and each officially declared in favor of the law as construed by the court, and pledged themselves to maintain the same on the statute books. Notwithstanding the declaration of both parties, the fight was carried into the campaign of the autumn of 1902, each party accusing the other of insin-

cerity and juggling with the question. It became the burning and paramount issue of that campaign. The legislature met in January, 1903, and remained in session sixty days, but no attempt was made to repeal or modify this law. On the other hand, bills were introduced, but never enacted, making it a penal offense to violate the existing law on the subject. These facts are a part of the public history of this state. During this period of more than two years and a half the various and respective interests and rights of settlers on the one hand and sheep owners on the other, as between themselves, have become fixed and settled, and conflicts and violence have ceased among them. To disturb this condition would be to invite recurrent strife, dangerous conflicts and endless confusion and discord among our citizens and alarm large industrial interests of the state without a single, apparent, good or beneficial result. The constitutional questions raised in this case were fully and ably presented in each of the former cases, and seem to have been elaborately considered by the court in the opinions. The issue made by appellant in this case is fully and clearly covered by those cases.

The writer of this opinion is of the belief that, whatever might be our judgment now, we would be wholly unjustified in opening these questions for further consideration by this court. If this subject is to again become the bone of contention in Idaho, it will have to come through either the legislature or a higher judicial tribunal than this.

Judgment affirmed, with costs to respondent.

Sullivan, C. J., concurs.

STOCKSLAGER, J., Dissenting.—I am unable to concur in the conclusion reached in this case. My associates state the two propositions presented by counsel for respective parties and decide the case on the doctrine of *stare decisis*. It is evident from the brief of appellant's counsel that they were anxious to have a decision on the constitutionality of the two sections of our statute in question in this case, from this court, as it is now constituted. It is equally evident from the brief of counsel for respondent that they were content with the former ruling of the

court on the constitutional question; hence invoke the doctrine of *stare decisis*.

Having expressed my views in a former decision of this court as to the constitutionality of the law in question (*Sweet v. Ballentine,* 8 Idaho, 431, 69 Pac. 995), I will only discuss the application of the doctrine of *stare decisis* as applied to the case at bar by my associates. I have no quarrel with the opinion as to the application of the doctrine of *stare decisis* in cases where property rights have attached or grown up under some existing law that has been declared valid by a court of last resort.

An examination of the former decisions of this court will disclose that when this question has been presented it has upheld the rule as above announced. The opinion in the case of *People v. Alturas County,* quoted approvingly by my associates in the majority opinion written by Mr. Justice Quarles as late as 1899, gives the reason why the former judgment of the court should not be disturbed: "It will thus be seen that more than two years ago this court held said act to be constitutional. Since then the people of these two counties, doubtless relying on the judgment of both the legislative and judicial branches of government, have acted on the theory that said act was valid; and the former decision of the court having been acted upon by the people who have adjusted the business matters of the county, funded old indebtedness, and created new, should not be disturbed at this late day." Then follows the quotation from this decision in the majority opinion. Under the facts in that case I think the writer very clearly and forcibly announced the doctrine urged by counsel for respondent, and I am in full sympathy and accord with it. In that case the counties of Blaine and Lincoln had been organized out of the territory theretofore comprising Alta and Logan, and formerly Alturas county. Officers had been appointed and afterward elected for the new counties. The courts had been organized and recognized the new counties as political divisions of the state. New records had been procured for the two new counties and the old records transcribed into the new. All of the old indebtedness had been adjusted, new bonds issued and passed into the hands of innocent purchasers. Well it may be said that much confusion would follow the action of the court in disturbing conditions

existing at the time of the attack on the former judgment of the court.

The case of *Fisher v. Horicon Iron Mfg. Co.*, 10 Wis. 355, an extract from which appears in the majority opinion, is in harmony with the views expressed in *People v. Alturas County.* The syllabus in this case shows what question was before the court and the reason for the application of the rule announced in the opinion quoted by my associates: "When the supreme court of the state had decided that the 'act covering mills and mill dams' was constitutional, and rights and interests have grown up and become vested under the law as then construed by the court, the court will now adhere to that ruling although all its members may be of opinion, if it were a new question, that the decision should have been against the constitutionality of the act." The fact that property rights had grown up under a former decision of the court seems to be the controlling principle and the reason for adopting the rule of *stare decisis.*

In 23 American and English Encyclopedia of Law, first edition, page 24, referred to in the majority opinion, I quote the entire section, to wit: "4. Single Decision and Decision in Series.—While a number of decisions seemingly corroborative of a previous one add strength to it and make it the more difficult to overrule or reverse it, mere numbers of cases upon the issue will not make the decision conclusive. Much more depends upon the opinion of the court and the emphasis placed upon the decision than upon the fact that any case has been followed subsequently. For a variety of reasons, several cases similarly decided are stronger than one. There is less likelihood of error; any points, decisions, or statutes overlooked in the one may be considered in subsequent cases; and the ease of reversing one decision is greater than the overthrow of a series. If there is but one case upon a point, and there seems no good reason for a reversal, that will ordinarily be taken as a fixed precedent. It is where there is a conflict of opinions or an evident error in the decision that a court will overrule one case, when it would hesitate more about condemning several. Much depends upon the importance of the decision and the weight to be attached to it. Whether the court is emphatic in its approval, whether the decision is one affecting or changing important interests, and whether it is expedient or good policy to

sustain or overrule a particular decision, are questions which have much influence upon the court."

It will be seen that the author, as in all the cases cited so far, ends his section with the announcement "whether the decision is one affecting or changing important interests." Note 1 to this section, referring to *Morse v. Goold,* 11 N. Y. 285, 62 Am. Dec. 103, is as follows: "The effect of such judgment of affirmance rendered by a divided court is as conclusive upon the rights of the parties to the judgment as any other, although it is not considered as settling the question of law as to cases which may arise between other parties." *Etting v. Bank of United States,* 11 Wheat. (U. S.) 59, 6 L. ed. 419, furnishes some very instructive reading. It is an opinion by Chief Justice Marshall and is referred to by the author in his note 1 above referred to. These are the authorities referred to in the majority opinion, and I assume are the foundation for the judgment.

I will now take up the other view of the situation as presented by the case at bar. In 23 American and English Encyclopedia of Law, first edition, page 36, under the head of "Limitations of the Rule," the author says: "There are certain reasonable limitations to this as to almost all rules. There are clear and palpable mistakes of law which should be corrected, especially when it can be done without injury to any person or property. If no injury or injustice would result to anyone, and a future and permanent benefit would undoubtedly result, the correction should be made at once. No prior decision is to be reversed without good and sufficient cause, yet the rule is not in any sense iron-clad, and future and permanent good to the public is to be considered rather than any particular case or interest. Even if the decision affects real estate interests and titles, there may be cases where it is plainly the duty of the court to interfere and overrule a bad decision. Precedent should not have an overwhelming or despotic influence in shaping legal decisions. No elementary or well-settled principle of law can be violated by any decision for any length of time. The benefit to the public in the future is of greater moment than any incorrect decision in the past. Whenever a correction can be made without working more harm than good, it should be done."

In *Hart v. Burnett*, 15 Cal., beginning at page 530 and ending at page 631, a very exhaustive opinion as well as instructive, at page 602, we find this significant language quoted from Chancellor Kent: "But I do not wish to be understood to press too strongly the doctrine of *stare decisis* when I recollect that there are more than one thousand cases to be pointed out in the English and American books of reports which have been overruled, doubted, or limited in their application. It is probable that the records of many of the courts in this country are replete with hasty and crude decisions; and such cases ought to be examined without fear and reversed without reluctance, rather than have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of the error."

Again, it is said: "Even a series of decisions is not always conclusive evidence of what is law; and the revision of a decision very often resolves itself into a mere question of expediency, depending upon the consideration of the importance of certainty in the rule, and the extent of property to be affected by a change of it."

This case cites with approval *Martin v. Martin,* 25 Ala. 201, in the following language: "A series of decisions made and followed up from the earliest judicial times is binding upon the judges, but says that if those decisions be opposed to the state or federal constitutions, they would take pleasure in discarding them."

In *Houghton v. Austin,* 47 Cal. 646, we find another long, instructive case on the question at bar, and approves the case of *Hart v. Burnett et al.,* at page 668; we quote: "The question of the conclusiveness of adjudications is not necessarily dependent upon the number of them. . . . . We must give force to the qualifications expressed in the words 'settled,' 'acquired in,' and the like. They cannot mean 'settled' by the mere fact of the adjudications, for then there would be no use in the terms; they would be without meaning, for every judgment on a title would, on this construction, settle the law. . . . . The rule itself implies that the doctrine protected by *stare decisis* cannot stand of itself. But it is a solecism to say that causes should be tried upon wrong principles—be decided

against law—whether it be for the purpose of justice or not, so to decide them. The law is not so false to itself as to require its own permanent overthrow, unless the subversion be necessary to the public interests; and whether it be so necessary in a given case, is for the court, as a matter of legal discretion, whenever the rule is invoked. No such rule ever existed as that a court should be absolutely bound by a previous decision. And it would be especially dangerous to apply this inexorable standard to questions decisive of the constitutional rights of the citizen. One provision of the constitution can impose no greater obligation than another. It may be that some time in the far distant future, a plain provision of the organic law may be temporarily lost sight of in the heat of a popular excitement. . . . . There may be those who assume that the judges of this court are utterly ignorant of the spirit of the times in which we live; but we are willing to believe we have reached the condition of 'progress,' when it is supposed by persons, however influential, that judges are to be driven from carrying into judgment their conscientious convictions of what the law demands, by suggestions of public hostility, encouraged, perhaps, by those who affect to regret that the courts should place themselves in opposition to the prevailing sentiment. We are by no means convinced, however, that the people feel the intense affection for the sections of the code which the parent entertains for his own bantling. There is a certain regard for the democratic idea which underlies all our institutions which the mere demagogue always fails to appreciate. It is based on the firm conviction that the masses of the people will ultimately understand that the violation of a constitutional privilege in the person of the humblest citizen is a greater evil than any inconvenience which may be supposed to exist under the government the people have solemnly adopted."

Again, in *San Francisco v. Spring Valley W. W.,* 48 Cal. 493, we find this statement in the syllabus: "*Stare Decisis.*—Even if property rights have grown up under an erroneous decision with regard to the construction of a clause in the constitution, it is better that inconvenience should be submitted to, rather than such decision should stand, and a valuable provision in the fundamental law be obliterated."

In *Ex parte Koser,* 60 Cal. 177, at page 204, in discussing the application of the rule of *stare decisis,* the court says: "Nor can the doctrine *stare decisis* be invoked to prevent us from inquiring into the constitutionality of the sections of the Penal Code." If, in *Ex parte Andrews* [18 Cal. 678], the act of 1858 was decided to be valid, in *Ex parte Newman* [9 Cal. 502], the same act was declared to be in conflict with the fourth section of the first article of the former constitution. In holding the sections of the Penal Code to be obnoxious to constitutional objection, we but return to the rule which, for more than three years, was the established rule in California. But if the case *Ex parte Andrews* stood alone—'No such rule ever existed as that a court should be absolutely bound by a previous decision. And it would be especially dangerous to apply this inexorable standard to questions decisive of the constitutional rights of the citizen.' (*Houghton v. Austin,* 47 Cal. 666.)

The supreme court of Texas in a very elaborate and well-considered opinion (*Willis v. Owen,* 43 Tex. 41) on pages 48, 49, speaks in no uncertain terms as to the application of the doctrine of *stare decisis:* "This doctrine grows out of the necessity for a uniform and settled rule of property, and definite basis for contracts and business transactions. If a decision is wrong, it is only when it has been so long the rule of action, as that time and its continued application as the rule of right between parties demands the sanction of its error. Because, when a decision has been recognized as the law of property, and conflicting demands have been adjusted, and contracts have been made with reference to and on faith of it, greater injustice would be done to individuals, and more injury result to society by a reversal of such decision, though erroneous, than to follow and observe it. But when a decision is not of this character, upon no sound principle do we feel at liberty to perpetuate an error, into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground of such erroneous decision having been previously rendered. The questions to be considered in these cases have no application whatever to the title or transfer of property, or to matters of contract. They involve the construction and interpretation of the organic law, and present for consideration the structure of the govern-

ment, the limitation upon legislative and executive power, as safeguards against tyranny and oppression. Certainly, it cannot be seriously insisted that questions of this character can be disposed of by the doctrine of *stare decisis."*

This court in a very recent decision, published July 1, 1903, written by Mr. Chief Justice Sullivan, and concurred in by Mr. Justice Ailshie (the writer took no part in the decision for the reason that the rights of the parties had been litigated before him while sitting as a district judge), laid down the rule for the application of the doctrine of *stare decisis.* This being my first opportunity to express my views on the question that was at issue in that case—*Parke v. Boulware, ante,* p. 225, 73 Pac. 19—I now give it my full and unqualified approval. The facts as stated by the court were as follows: "This action was brought to recover $500 damages for an alleged wrongful destruction of certain dams alleged to have been situated in appellant's irrigating ditch, by means of which appellant raised water out of his said ditch onto his land for irrigating purposes, and also for a perpetual injunction restraining respondent from interfering with said dams and ditches or of the flow of the water therein. The defendants (who are respondents here) answered and denied that appellant or his predecessors in interest constructed the water channel claimed by him as a ditch, and averred that the same is one of the natural channels of Cassia creek, through which water has from time beyond the memory of man ever flowed, and that said channel was known as the north fork of Cassia creek; that said channel had been used by respondents and their predecessors in interest for more than twenty years from Cassia creek to and upon their lands, and averred that the use of said channel by appellants had been in common with that of respondents; and denied that they had cut away and removed said dams or that they threatened to remove the same." The case was tried in the lower court, judgment entered, and appeal taken to this court, and on hearing reversed; another trial was had below, judgment entered, another appeal taken, and upon the hearing the doctrine of *stare decisis* was sought to be invoked The court said: "The doctrine of *stare decisis* is not applicable to this case. We cannot regard that rule as showing any application to this case. That rule or doctrine grew out of the necessity for a uniform

and settled rule of property, and to form a definite basis for contracts and business transactions."

It would seem from all the authorities bearing on the question of the application of the doctrine of *stare decisis* that if property rights have grown up or have been settled under an existing decision of the court of last resort, the judgment will usually be upheld. This is certainly the correct rule; has been twice so declared by this court, and if it is shown in the case at bar that such a condition exists, then it should prevail here.

Are the reasons for the application of this rule sufficient? What property rights have grown up under these two sections of the statute? Does the fact that they have remained on the statute books since 1875 make them valid or give them special meaning; or is it because they were permitted to repose for a term of twenty-seven years before anyone attempted to enforce them that they are to be given new meaning or special vitality? Does the fact that the two political parties were seeking for an advantage give these sections force and validity? Does the fact that the legislature met in 1903 and did not repeal or modify this law give it additional strength, or is their silence on the subject to be so construed that the doctrine of *stare decisis* must be invoked and a new rule for the application of the doctrine established by this court? Does the fact that "bills were introduced making it a penal offense to violate the existing law on the subject" add force to the law or change the doctrine of *stare decisis?* It is true, as stated in the majority opinion, that "these facts are a part of the public history of the state," but does that add force and validity to the law, or does it change the doctrine of *stare decisis?* If property rights have been settled or grown up since this law was first declared constitutional by a divided court in June, 1901, then there is some reason for the application of the rule invoked by my associates in the majority opinion. Did anyone ever hear of the government permitting property rights to attach to the public domain, excepting by proper entry under the land laws of the United States? It is as much a matter of public history that the government will not permit an individual to fence the public domain and thus withdraw it from the use and benefit of

the public as is the actions of the political parties in attempting to juggle with a statute and thus acquire political advantage.

The constitutional rights of the people cannot be disposed of in this way, nor can the doctrine of *stare decisis* be invoked to accommodate the whims or caprices of either or both parties.

I cannot concur in the statement in the majority opinion as to the "respective rights and interests of settlers on the one hand and sheep owners on the other, as between themselves, have become fixed and settled." The court records show that a vast number of suits have arisen, three of them finding their way to this court. The dangerous conflicts we have had in this state have not been between the settlers and stock men, but between conflicting stock interests.

For the foregoing reasons, based on the decisions of all the courts, including the only two expressions of our own court, I do not believe the doctrine of *stare decisis* should control, and that appellant was entitled to a decision on the merits of the case.