(June 21, 1901.)

## SIFERS v. JOHNSON.

### [65 Pac. 709.]

POLICE REGULATION—DOMESTIC ANIMALS.—A statute making it un-
lawful to herd or graze sheep within two miles of an inhabited
dwelling, and making the owner of sheep so herded or grazed
liable for damages to the injured party, is a valid exercise of the
police power of the state, and not unconstitutional.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

Guy C. Barnum, for Appellant, cites no authorities upon the
point decided by the court.

L. L. Sullivan, for Respondent.

The main question in this case is as to whether the provi-
sions of section 1210 of the Revised Statutes, are in conflict
with the federal constitution or the laws of Congress. That is
the question upon which both parties to this case desire the
decision of this court. In the case at bar, a reasonable police
regulation has been established for the protection of the rights
of the farmers of the state and for the preservation of the
peace and good order of society. It is stated by a leading law-
writer that about ninety per cent of the legislation of the
United States is in regard to police regulations. It is stated
in *State v. Harrington,* 68 Vt. 622, 35 Atl. 515, 34 L. R. A.
100, that the police power is not limited to the protection of
health, morals and education, but comprehends all of those
general laws and regulations necessary to secure the peace and
good order of the people. In the exercise of its police power, a

state may, absolutely or unconditionally, restrain any and all livestock from running at large; and this without any reasons or grounds other than that of expediency, as determined by their legislative will. (See *Kimmish v. Ball,* 129 U. S. 217, 9 Sup. Ct. Rep. 277, 32 L. ed. 695, and authorities cited on page 696; 1 Tiedeman on State and Federal Control of Persons and Property, 1.)

QUARLES, C. J.—The plaintiff commenced this action in the justice's court of Soldier precinct, in Blaine county, to recover damages from the defendant by reason of trespass committed by sheep belonging to and under the control of the defendant upon the premises, and within two miles of the same. The plaintiff recovered judgment, and the defendant appealed to the district court; and upon a trial in the district court, plaintiff recovered a verdict for $100 damages, upon which a judgment was entered in favor of the plaintiff and against the defendant for the sum of $100 and costs. Defendant then moved for a new trial, which being denied, he appealed from the order denying a new trial and from the judgment.

It appears from the record that the respondent owns the lands upon which he resides and which he farms in fee simple; that he has his said lands inclosed, and, at the date of the trespass complained of, had growing crops thereon, same being inclosed with barbed-wire fences; that the sheep of appellant were herded and grazed immediately around the residence and farm of the respondent, and trespassed within his inclosures; that a few of the sheep died—some within the field of respondent, and some very near to his house—and were permitted by appellant to there remain. The damage done to respondent was estimated at from $100 to $250 by the witnesses, including that within his inclosure, and that to the pasturage without, but within two miles of his dwelling. The evidence also shows that appellant had five bands of sheep—about two thousand in each band—grazing within two miles of the dwelling of the respondent, and so destroyed the pasturage that cattle and horses could not exist there; that cows will not graze where sheep have been grazed the same season. The respondent ex-

postulated with appellant about the latter grazing his bands of sheep about and around his dwelling; whereupon appellant said to respondent, in substance, that "when he was in the cattle business the sheepmen ran sheep in on his range and destroyed the range, and he had to go out of the cattle business, and now he was in the sheep business, and he didn't know any way for us to do but to take our medicine." It appears that the jury took into consideration both the damages that respondent sustained by reason of the sheep trespassing within his fields and those sustained by him by reason of the sheep being grazed within two miles of his dwelling.

·     Sections 1210-1212 of the Revised Statutes of Idaho are as follows:

"Sec. 1210. It is not lawful for any person owning or having charge of sheep to herd the same, or permit them to be herded on the land or possessory claims of other persons, or to herd the same or permit them to graze within two miles of the dwelling-house of the owner or owners of such possessory claims.

"Sec. 1211. The owner or the agents of such owner of sheep violating the provisions of the last section, on complaint of the party or parties injured before any justice of the peace for the precinct where either of the interested parties may reside, is liable to the party injured for all damages sustained; and if the trespass be repeated, is liable to the party injured for the second and every subsequent offense in double the amount of damages sustained.

"Sec. 1212. When the owner or the agent of such owner of sheep found trespassing upon the land or possessory claims of another, or within two miles of the dwelling-house of the claimant or occupant of such possessory claim, is unknown to the party injured by such trespass, all sheep so trespassing may be treated as estrays."

It is contended by appellant that these statutes are unconstitutional and void. Appellant also contends that, if these sections are held valid, they do not apply to this case, for the reason that the respondent owned the land upon which his dwelling was situated, and the same was not upon a possessory

claim. The latter contention is not tenable, as the legislature evidently intended to protect settlers from the injury and annoyance of having sheep herded and grazed around their habitations, whether they possessed the same absolutely and had title thereto, or held only by mere naked possession. The other contention raises the serious question in the case. As we view it, this is purely a question of police power. The police power of the state is very great. Under it many things may be done which at first glance seem to infringe upon natural and civil rights. The protection of health, prevention and suppression of nuisances, controlling the conduct of business which affects others not engaged in the same, the preservation of the public peace and protection of the public welfare are legitimate subjects calling for the exercise of the police power of the state. Judge Cooley, in his work upon Constitutional Limitations, sixth edition, at page 704, says: "The police of a state, in a comprehensive sense, embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of the rights of others." The same author, at page 705, quotes from Chief Justice Shaw, in *Commonwealth v. Alger,* 7 Cush. 53, with approval, this language: "We think it is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. . . . . . Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing

and controlling power vested in them by the constitution, may think necessary and expedient." At page 743 the said author says: "The most proper business may be regulated to prevent its becoming offensive to the public sense of decency, or for any other reason injurious or dangerous." In his work upon State and Federal Control of Persons and Property, Mr. Tiedeman, at page 838, says: "In every state the keeping of livestock is under police regulation. . . . . The clash of interest between stock raising and farming calls for the interference of the state by the institution of police regulations; and whether the regulations shall subordinate the stock-raising interest to that of farming, or *vice versa,* in the case of an irreconcilable difference, as is the case with respect to the going at large of cattle, is a matter for the legislative discretion, and is not a judicial question. In the exercise of this general power of control over the keeping of livestock, the state or municipal corporation may prohibit altogether the running at large of such animals, and compel the owners to keep them within their own inclosures." Inasmuch as the legislature may prohibit the running at large of livestock, we see no reason why it should be held that it may not prohibit the running at large altogether of certain livestock, nor why certain livestock (for instance, sheep) should not be forbidden to be herded within two miles of the dwelling of a settler. We have statutes which, in effect, prohibit hogs from running at large. See sections 1340 to 1344, inclusive, of the Revised Statutes, wherein it is provided that the owner or occupant of premises need not fence against hogs; that the owner of hogs that trespass upon the inclosure of others is liable for damages; for the impounding of trespassing hogs, etc. These statutes, like those in question here, were enacted to protect the farmers from annoyance and injury caused by the trespassing of hogs, and to save them expense in fencing against hogs. It is a matter of common knowledge and experience that a fence will keep out cattle and horses that will not sheep or hogs. It is evident that in passing the statutes cited, relative to the running at large of hogs, and the herding and grazing of sheep within two miles of dwelling-houses, the legislature intended to further the public good and preserve the peace, by

preventing those conflicts which would naturally result from the herding of sheep about the dwellings of settlers. The statutes were intended to promote the public good and avoid danger and injury to the citizen. They were also evidently intended to protect the health of the settlers, and as those questions are of legislative discretion, and not judicial, we are not authorized to hold the statutes unconstitutional.

It is contended by the appellant that every citizen has the right to pasture the public domain, and that, if the statutes in question are held valid, it amounts to taking property without due process of law. There is nothing in this contention. We know of no statute enacted by Congress which grants the citizen the right of pasturage upon the public domain, and counsel for appellant cites no such statute. Citizens graze their stock upon the public domain by sufferance of the general government, and not by virtue of any vested right. When Idaho was admitted into the Union of states, she was not fettered or restricted in the exercise of the police power that attaches to statehood by any provision in the admission act, and it cannot be reasonably contended that, because lands are situated within her borders that belong to the general government, and which private parties are permitted, by sufferance, to pasture, she is limited in the exercise of what would otherwise be legitimate police power. It follows from what has been said that the statutes in question are valid. Finding no reversible error in the record, the order denying a new trial and the judgment are affirmed, with costs of appeal to the respondent.

Sullivan, J., concurs.

Stockslager, J., dissents.