# In Re CALVO

## No. 2747

February 21, 1927.                          253 P. 671.

1. COURTS—STATE CAN REGULATE GRAZING ON PUBLIC DOMAIN UNDER POLICE POWER.

Supreme Court of Nevada is bound by the decisions of the Supreme Court of the United States that a state has power to regulate grazing on the public domain under the police power, notwithstanding Const. U. S. Amend. 14, providing that state cannot deprive one of his property without due process of law or abridge rights of citizens of United States.

2. CONSTITUTIONAL LAW—STATE CAN REGULATE WATERING OF LIVE STOCK ON PUBLIC DOMAIN UNDER POLICE POWER.

Stats. 1925, c. 201, providing that no person, without the right to do so shall, on two or more separate days during any season, water more than 50 head of live stock at the watering place at which another shall have a subsisting right to water 50 head of live stock, or within three miles of such place, with intent to graze the live stock on the portion of the public range readily accessible, *held* a valid exercise of the police power, and not contrary to U. S. Const. Amend. 14, as depriving persons affected of property without due process of law, or abridging rights of citizens of United States.

3. CONSTITUTIONAL LAW—IMAGINARY CASE.

Supreme court will not consider an imaginary case, not in accord with facts presented, in determining the validity of Stats. 1925, c. 201, regulating use of watering place of another with intent to graze the live stock on the portion of the public range readily accessible, as authorizing taking of property without due process of law, contrary to Const. U. S. Amend. 14, since matter is moot question.

4. PUBLIC LANDS—FEDERAL AND STATE ACTS.

Stats. 1925, c. 201, regulating use of watering place of another with intent to graze the live stock so watered on portion of the public range readily accessible, *held* not invalid as conflicting with act Cong. Feb. 25, 1885 (U. S. Comp. St. sec. 991 [21], 4997–5002), which was designed to prevent the illegal fencing in of public lands.

5. PUBLIC LANDS—MONOPOLIES.

Stats. 1925, c. 201, forbidding watering more than 50 head of live stock on two or more days during any season at watering place of another, with intent to graze the live stock on the portion of the public range readily accessible, *held* not invalid as granting a monopoly.

6. PUBLIC LANDS—ENABLING ACT.

Stats. 1925, c. 201, prohibiting watering live stock at another's watering place, with intent to graze the live stock on the portion of the public range readily accessible, *held* not invalid as violating enabling act, by which people of state disclaimed all right and title to unappropriated public lands within state.

7. PUBLIC LANDS—FEDERAL AND STATE ACTS.

Stats. 1925, c. 201, regulating watering of live stock at another's watering place, with intent to graze live stock on public range, is inoperative, in so far as federal government conveys title to public domain, or otherwise exercises control over it.

8. PROHIBITION—INDEFINITENESS OF STOCK-WATERING STATUTE.

Indefiniteness of Stats. 1925, c. 201, regulating use of watering places of another, with intent to graze live stock on the portion of the public range readily accessible, as precluding criminal prosecution, cannot be properly raised on application for prohibition to prevent trial for violation of statute.

9. CRIMINAL LAW—INDEFINITENESS OF STOCK-WATERING STATUTE.

Stats. 1925, c. 201, regulating watering of live stock at another's watering place, with intent to graze the live stock on the portion of the public range readily accessible, held not so indefinite as to preclude prosecution for violation thereof, in view of sections 1, 2, and 3, pertaining to acquisition of right to water live stock, and section 4, being confined to definition of offense and fixing of penalty.

10. STATUTES—TITLE.

Const. art. 4, sec. 17, providing that each law enacted by the legislature shall embrace but one subject and matters properly connected therewith, which shall be briefly expressed in the title, must be given a liberal construction.

11. STATUTES—TITLE.

Title of Stats. 1925, c. 201, to wit, "An act relating to the use of water for watering live stock, the acquisition and proof of the right to such use, making certain actions a misdemeanor and prescribing a penalty therefor," held to cover provision regulating use of watering places, with intent to graze live stock on public range, within Const. art. 4, sec. 17.

12. PUBLIC LANDS—STATUTE REGULATING WATERING LIVE STOCK ON PUBLIC RANGE HELD NOT INVALID AS MAKING MERE INTENTION CRIMINAL.

Stats. 1925, c. 201, makes both watering of live stock at watering place of another, and intention to graze the live stock on the portion of the public range readily accessible, elements of offense, and hence is not invalid as making mere intention criminal.

13. STATUTES—STATUTE REGULATING USE OF WATERING PLACES, WITH INTENT TO GRAZE LIVE STOCK ON PUBLIC RANGE, HELD NOT INVALID AS NOT GENERAL.

Stats. 1925, c. 201, regulating watering of live stock at watering place of another, with intent to graze live stock on portion of public range readily accessible, held not invalid as violative of Const. art. 4, sec. 21, requiring laws to be general, where general law can be made applicable.

14. JUSTICES OF THE PEACE—STATUTE PENALIZING USE OF WATERING PLACES, WITH INTENT TO GRAZE LIVE STOCK ON PUBLIC RANGE HELD NOT TO GIVE JUSTICES OF THE PEACE JURISDICTION OF CASES INVOLVING TITLE TO REAL ESTATE.

Stats. 1925, c. 201, penalizing watering of live stock at

another's watering place, with intent to graze the live stock on the portion of the public range readily accessible, *held* not invalid as giving justices of the peace jurisdiction of cases involving the title to real estate.

### C. J.–CYC. REFERENCES

CONSTITUTIONAL LAW—12 C. J. sec. 219, p. 787, n. 80, 81; sec. 440, p. 928, n. 12, 14; sec. 840, p. 1122, n. 73, 74, 93 (new); sec. 1098, p. 1285, n. 71 (new).

COURTS—15 C. J. sec. 318, p. 931, n. 82; p. 932, n. 84; p. 933, n. 85.

CRIMINAL LAW—16 C. J. sec. 28, p. 68, n. 8, 14, 15 (new).

JUSTICES OF THE PEACE—35 C. J. sec. 66, p. 499, n. 49; p. 500, n. 52.

MONOPOLIES—41 C. J. sec. 13, p. 86, n. 58.

PROHIBITION—32 Cyc. p. 629, n. 1; p. 630, n. 2.

PUBLIC LANDS—32 Cyc. p. 794, n. 2; p. 796, n. 38 (new).

STATUTES—36 Cyc. p. 986, n. 70; p. 991, n. 87; p. 1018, n. 79; p. 1022, n. 96, 1; p. 1023, n. 2; p. 1035, n. 52; p. 1047, n. 12.

ORIGINAL APPLICATION by Nicolas Calvo for a writ of prohibition to be directed to a justice of the peace. **Proceedings dismissed, and alternative writ discharged.**

*McCarran & Mashburn,* for Petitioner:

Hetch v. Harrison, 40 P. 306; Martin v. Platte Valley Sheep Co., 76 P. 571; Buford v. Houtz, 33 L. Ed. 618; State v. Horn, 152 P. 276; Omaechevarria v. Idaho, 62 L. Ed. 269; Hazas v. State, 219 P. 229; Hill v. Winkler, 151 P. 1014; Bacon v. Walker, 51 L. Ed. 204; and State v. Coppinger, 115 P. 732, uphold statutes which inhibit grazing by certain class of stock within certain limits on public land on ground that under police power states have power to so legislate, due to peculiar nature of those animals. All declare grazing on public domain is under implied license by government. Our statute makes no such classification as to stock, but classifies owners as holders or nonholders of weird and indefinite subsisting water rights, and excludes all stock regardless of kind from certain limits. Its purpose is only to control and monopolize range, which is frowned upon by all the decisions. Law is unjust which deprives one of recognized right to graze at large on public land and feed there, while under pretense of having subsisting water right, another obtains monopoly of adjacent range.

Act is too indefinite to permit of criminal prosecution. Such phrases as "in sufficient numbers," "readily accessible," "substantially interfere," "in such proximity," are samples of loose language used.

Act is unconstitutional because subject is not expressed in title. Const. art. 4, sec. 17; Ex Rel. Drury v. Hallock, 12 P. 832.

Mere intent to graze is declared a crime, though there is no crime without joint union of act and intent.

State engineer is vested with judicial power over public domain.

Congress alone has power to regulate and dispose of federal property. U. S. Const. sec. 3, art. 4.

Act violates federal act against fencing unappropriated public land or assertion of right to exclusive use without color of right. Fed. Stat. Ann. 752.

*M. A. Diskin,* Attorney-General; *Wm. Forman, Jr.,* Deputy Attorney-General; *Edgar Eather,* District Attorney, and *Price & Hawkins,* for Respondent; *Chandler & Quayle,* amici curiæ:

Act prohibits one from driving stock·on range occupied by another and using his water, or accomplishing same purpose by watering near by and consuming his grasses, thereby rendering wåter right as useless as if water itself were taken. It does not affect one's water rights within three miles of another's existing at time of enactment; migratory herds, herds less than 50 head, nor grazing any number provided they are not watered as indicated. It is not local, but operates throughout entire state. It is not special, but acts uniformly on all of a particular class—those who water more than 50 head, as indicated.

Similar acts have been upheld in western grazing states, though every conceivable objection was raised against them. States possess and can exercise police power over public lands. The authorities demonstrate judicial thought and reasoning, and clearly establish validity of act. Pyramid Land Co. v. Pearce, 95 P. 210;

Sivers v. Johnson, 65 P. 797; Sweet v. Ballentyne, 69 P. 997; State v. Horn, 152 P. 275; Bacon v. Walker, 204 U. S. 311; Omaechevarria v. Idaho, 246 U. S. 343; Hazas v. State, 219 P. 229; State v. Coppinger, 155 P. 732; Hill v. Winkler, 131 P. 1014; Yates v. White, 235 P. 437.

Act embraces but one subject; title is sufficiently broad. Ex Parte Ah Pah, 34 Nev. 283.

Act does not conflict with sub. 3, sec. 4, of state enabling act as no claim of right or title to public lands is asserted.

## OPINION

By the Court, COLEMAN, J.:

This is an original proceeding in prohibition to prevent the respondent, a justice of the peace, from proceeding to try the petitioner upon a complaint wherein he is charged with violating section 4, c. 201, Stats. 1925, in that he grazed more than 50 head of sheep within three miles of a certain spring owned by another. Section 4 of the act reads:

"Any person who, without the right so to do, shall on two or more separate days during any season, water more than fifty head of live stock at the watering place at which another shall have a subsisting right to water more than fifty head of live stock, or within three miles of such place, with intent to graze the live stock so watered on the portion of the public range readily accessible to livestock watering at the watering place of such other person, shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine not exceeding the sum of five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

"Each day's watering in violation of this section shall be deemed a separate offense.

"Whenever, in any prosecution for such offense, it shall appear that the watering by the accused was not done at the watering place of another, but was done

within three miles thereof, it shall be a sufficient defense for the accused to prove that he had no knowledge of the existence of such other watering place."

It is contended that the statute under which the prosecution was initiated is unconstitutional, null, and void. In support of this contention it is urged that by the act the state seeks to exercise a control over the public domain of the United States.

The preamble to the act in question recites the importance of the use of water for watering range live stock; that the value of the right to water such stock is directly dependent upon the availability to the owner of such right of the use of the public range in the vicinity of such watering places; and that the existence in the separate owners of two or more rights for watering range live stock in the same vicinity tends to produce controversies concerning the use of the public range, which often results in breaches of the peace.

The chief contention of counsel for the petitioner is expressed in their brief as follows:

"It is our position that the legislature of the State of Nevada, in enacting the 1925 statute, has encroached upon the power of the federal government to dispose of and make needful rules and regulations respecting the grazing lands belonging to the United States; that the State of Nevada is repudiating its contract with the federal government forever to disclaim all right to the unappropriated public lands lying within its borders, and agreeing that the same shall be and remain at the sole and entire disposition of the United States government. We contend that by legislation the state has attempted to fence off certain lands by statute, and that to all intents and purposes this statute constitutes encroachment on public lands of the United States, and we especially emphasize that this statute violates the congressional act set up in our petition, in that it constitutes an exercise of a right to the exclusive use and occupancy of a portion of the public lands of the United States, and delegating that right of occupancy to another, to wit, a party having a subsisting right to water range stock at a given place."

The foregoing contention is bottomed, as we gather, upon the fourteenth amendment to the federal constitution, which prohibits a state from abridging the rights, privileges, and immunities of citizens of the United States, from depriving any person of property without due process of law, and from denying to any person the equal protection of the law.

It is petitioner's contention that each citizen, in common with every other citizen, has a right to graze his live stock on the public domain, and that the state has no power to interfere with the exercise of such right. He rests this contention upon the concluding paragraph of the opinion in Buford v. Houtz, 133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618, which reads:

"Upon the whole, we see no equity in the relief sought by the appellants in this case, which undertakes to deprive the defendants of this recognized right to permit their cattle to run at large over the lands of the United States and feed upon the grasses found in them, while, under pretense of owning a small proportion of the land which is the subject of controversy, they themselves obtain the monopoly of this valuable privilege."

Just how the paragraph quoted can affect the case in hand is beyond our understanding. That was a case in which Buford owned tracts of unfenced land, interspersed with large tracts of public domain, in a state where the law required a landowner to fence against live stock running at large, if he desired to keep them off his lands; the court holding that under such conditions the plaintiff could not enjoy a monopoly to large tracts of public land through an injunction restraining the defendants from permitting their cattle to run at large. That case has no application to the situation in hand, as is shown in Northern Pacific Ry. Co. v. Cunningham (C. C.), 89 F. 594, and in Spencer v. Morgan, 10 Idaho, 542, 79 P. 459.

The question whether a state might make certain regulations affecting the enjoyment of grazing privileges upon the public domain of the United States has been raised often in the courts of this country, and in every instance that right, within certain limitations,

has been upheld under the general police power of the state where the regulation was for the purpose of promoting the peace and good order of society or the general welfare of the state.

In this state the right to make such a regulation as to the grazing of sheep was upheld in Pyramid L. & L. Co. v. Pierce, 30 Nev. 237, 95 P. 210, under the general police power of the state. Such has been the conclusion reached by every court in the land in which the question has been raised. This question was first considered in Idaho in the case of Sifers v. Johnson, 7 Idaho, 798, 65 P. 709, 54 L. R. A. 785, 97 Am. St. Rep. 271, in which the validity of the law prohibiting the grazing of sheep on the public domain within two miles of a residence was attacked as unconstitutional upon substantially the same grounds as are urged in the instant case. The court upheld the statute upon the ground that the act was valid as a police regulation. The same question came before the Idaho court in the case of Sweet v. Ballentyne, 8 Idaho, 431, 69 P. 995, wherein the court reconsidered the question at considerable length, adhering to the conclusion reached in the former case.

The same question was again presented to the Idaho court in the case of Walker v. Bacon, 11 Idaho, 127, 81 P. 155, 114 Am. St. Rep. 262, where the court adhered to its former conclusions, contenting itself with merely citing authorities in support thereof. The last-named case was taken on writ of error to the Supreme Court of the United States, where the judgment of the Idaho court was affirmed. Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499. The question was again before the Supreme Court of Idaho in the case of State v. Omaechevarria, 27 Idaho, 797, 152 P. 280, and in the companion case of State v. Horn, 27 Idaho, 782, 152 P. 275, wherein the court at some length again reviewed the question, adhering to its former conclusion. This case was likewise taken by writ of error to the Supreme Court of the United States, wherein the judgment was affirmed. Omaechevarria v. State of Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. Ed. 763.

1.  While the reasons adopted in the opinions in the Idaho cases cited in support of their conclusion are sound, the decisions of the Supreme Court of the United States to which we have alluded are the last word upon the question, and are controlling upon us, whether sound or unsound.

2.  The court, in Bacon v. Walker, 204 U. S. 314, 27 S. Ct. 289, 51 L. Ed. 499, in disposing of the contention that the Idaho statute was violative of the fourteenth amendment to the constitution of the United States, said:

"The specifications of the grounds of the unconstitutionality of those sections were in the courts below and are in this court: (1) That plaintiff in error has an equal right to pasture with other citizens upon the public domain, and that by imposing damages on him for exercising that right he is deprived of his property without due process of law; (2) that a discrimination is arbitrarily and unlawfully made by the statutes between citizens engaged in sheep grazing on the public domain and citizens engaged in grazing other classes of stock.

"These grounds do not entirely depend upon the same considerations. The first denies to the state any power to limit or regulate the right of pasture asserted to exist; the other concedes such power, and attacks it only as it discriminates against the grazers of sheep. * * * Is it true, therefore, even if it be conceded that there is right or license to pasture upon the public domain, that the state may not limit or regulate the right or license? Defendants in error have an equal right with the plaintiff in error, and the state has an interest in the accommodation of those rights. It may even have an interest above such accommodation. The laws and policy of a state may be framed and shaped to suit its conditions of climate and soil. Illustrations of this power are afforded by recent decisions of this court. * * *

"These cases make it unnecessary to consider the argument of counsel based upon what they deem to be the limits of the police power of a state, and their contention that the statute of Idaho transcends those limits. It

is enough to say that they have fallen into the error exposed in Chicago, Burlington & Quincy Railway Co. v. Drainage Commissioners, 200 U. S. 561, 592 [26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175]. In that case we rejected the view that the police power cannot be exercised for the general well-being of the community. That power, we said, embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety. We do not enter, therefore, into the discussion whether the sheep industry is legitimate and not offensive. Nor need we make extended comment on the two-mile limit. The selection of some limit is a legislative power, and it is only against the abuse of the power, if at all, that the courts may interpose. But the abuse must be shown. It is not shown by quoting the provision which expresses the limit. The mere distance expressed shows nothing. It does not display the necessities of a settler upon the public lands. * * * We think, therefore, that the statutes of Idaho are not open to the objection that they take the property of plaintiff in error without due process of law, and pass to the consideration of the charge that they make an unconstitutional discrimination against the sheep industry."

In Omaechevarria v. Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. Ed. 763, was involved the Idaho statute prohibiting the grazing of sheep on any cattle range previously occupied by cattle. In disposing of the constitutional objection made to the statute in that case, the court said:

"These contentions are, in substance, the same as those made in respect to the 'Two Mile Limit Law,' in Bacon v. Walker [204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499], supra; and the answer made there is applicable here. The police power of the state extends over the federal public domain, at least when there is no legislation by Congress on the subject. We cannot say that the measure adopted by the state is unreasonable or arbitrary."

The court held the statute a valid exercise of the police power of the state.

In the case of McKelvey v. United States, 260 U. S. 353, 43 S. Ct. 132, 67 L. Ed. 301, the court said:

"It also is settled that the states may prescribe police regulations applicable to public land areas, so long as the regulations are not arbitrary or inconsistent with applicable congressional enactments. Among the regulations to which the state power extends are quarantine rules and measures to prevent breaches of the peace and unseemly clashes between persons privileged to go upon or use such areas.

"Two regulations of the latter type by the State of Idaho have been sustained by this court—one making it unlawful to herd sheep or permit them to graze within two miles of the dwelling house of another having a possessory claim to the land whereon the house stands (Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499), and the other making it unlawful to herd sheep or permit them to graze on a range which by prior usage has come to be a cattle range (Omaechevarria v. Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. Ed. 763)."

To the same effect are the following cases: Walling v. Brown, 9 Idaho, 184, 72 P. 960; Phipps v. Grover, 9 Idaho, 415, 75 P. 64; Walling v. Brown, 9 Idaho, 740, 76 P. 318, 2 Ann. Cas. 720; Spencer v. Morgan, 10 Idaho, 542, 79 P. 459; Walker v. Bacon, 11 Idaho, 127, 81 P. 155, 114 Am. St. Rep. 262; State v. Horn, 27 Idaho, 782, 152 P. 275; Hill v. Winkler, 21 N. M. 5, 151 P. 1014; Yates v. White, 30 N. M. 420, 235 P. 437; State v. Coppinger, 21 N. M. 435, 155 P. 732; Hazas v. State, 25 Ariz. 453, 219 P. 229; Sifers v. Johnson, 7 Idaho, 798, 65 P. 709, 54 L. R. A. 785, 97 Am. St. Rep. 271; Sweet v. Ballentyne, 8 Idaho, 431, 69 P. 995; State v. Omaechevarria, 27 Idaho, 797, 152 P. 280.

But counsel for petitioner seek to distinguish the Idaho cases we have alluded to from the instant case. If we correctly interpret counsels' brief, it is contended that the Idaho cases and Bacon v. Walker, supra, merely held that, because of the offensive character of sheep, the law

was sound, but that, since the statute in question in the instant case affects cattle, horses, and all live stock alike, the rule laid down in the cases mentioned does not apply, and in support of the contention they direct our attention to State v. Coppinger, 21 N. M. 435, 155 P. 732; Hazas v. State, 25 Ariz. 453, 219 P. 229; Hill v. Winkler, 21 N. M. 5, 151 P. 1014; and Omaechevarria v. Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. Ed. 763, from which latter opinion they quote as follows:

"The Idaho statute makes no attempt to grant a right to use public lands. * * * The state acting in the exercise of its police power, merely excludes sheep from certain ranges under certain circumstances. * * * The incidental protection which it thereby affords to cattle owners does not purport to secure to any of them, or to cattle owners collectively, 'the exclusive use and occupancy of any part of the public lands.' For every range from which sheep are excluded remains open not only to all cattle, but also to horses, of which there are many in Idaho."

We do not understand that the fact that sheep may be offensive entered into the cases referred to at all. Such may have been one of the moving causes which prompted the legislature to enact the law, but the courts uniformly upheld the legislation upon the ground that it was within the police power of the state. In Sweet v. Ballentyne, 8 Idaho, 431, 69 P. 995, the court, speaking through Quarles, C. J., said:

"The statutes in question were enacted for the protection of the health, the property, and welfare of the inhabitants of this state, and to promote good order. The statutes cited make it unlawful to herd or graze sheep on the lands of another, or within two miles of the dwelling of another."

The court then considers at considerable length the policy which prompts such legislation, and, as we have said, based its conclusion upon the general ground that such legislation is within the police power of the state. Such is the theory which leads to the conclusion reached in all of the cases.

The trouble with counsels' position as to the quotation set forth is that they do not quote enough of the opinion to correctly show the real position of the court, and the reason for its conclusion on the phase of the case then being considered. After making the statement quoted, the court goes on to say:

"This exclusion of sheep owners under certain circumstances does not interfere with any rights of a citizen of the United States. Congress has not conferred upon citizens the right to graze stock upon the public lands. The government has merely suffered the lands to be so used. Buford v. Houtz [133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618], supra. It is because the citizen possesses no such right that it was held by this court that the secretary of agriculture might, in the exercise of his general power to regulate forest reserves, exclude sheep and cattle therefrom. United States v. Grimaud, 220 U. S. 506 [31 S. Ct. 480, 55 L. Ed. 563]; Light v. United States, 220 U. S. 523 [31 S. Ct. 485, 55 L. Ed. 570].

From this language it will be seen that the court gave its real reason for its conclusion; namely, the exclusion of sheep owners does not interfere with any right of a citizen, for the reason that Congress has not conferred upon citizens the right to graze stock upon public lands, but that that privilege was merely tolerated by the federal government, and, the state having the right to exercise its police power over the public domain, the plaintiff had no recourse. The same reasoning would apply in case of cattle or horses.

3. In discussing the contention that the act in question authorizes the taking of property without the due process of law, counsel presents an imaginary case which is not in accord with the facts in the matter before us. It being a moot question, we decline to discuss it.

4, 5. It is asserted that the act in question is in conflict with the act of Congress of February 25, 1885 (U. S. Comp. St. secs. 991 [21], 4997–5002), entitled "An act to prevent unlawful occupancy of the public lands," which was designed to prevent the illegal fencing in of public lands, and that it grants a monopoly. The

Supreme Court of the United States in Omaechevarria v. Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. Ed. 763, supra, has repudiated the first contention, and we are not disposed to overrule that court. We have shown that the case just mentioned cannot be distinguished in principle from the instant case, and will not again undertake to do so. Nor is there merit in the contention that the act grants a monopoly. No restrictions are placed upon the grazing or watering of less than 50 head of live stock, nor is there any restriction upon one who is driving his live stock through the country, provided he does not water more than one day in a season at a given place. Furthermore, one may graze any number of head of live stock on the public domain and for any length of time, provided he does not water them within three miles of another's watering place.

The restrictions imposed not only do not grant a monopoly, but, in the opinion of the legislature, are reasonable and necessary to the peace and good order of society, and to the promotion of the general welfare.

6, 7. The statute in question is not violative of the Nevada enabling act whereby the people of the state agreed to forever disclaim all right and title to the unappropriated public lands lying within its boundaries. The state is not asserting any right or title to the public domain under the act herein assailed. All that the state seeks to do pursuant to the statute is to exercise police regulations over the public domain. This it has a right to do, as we have shown. Furthermore any time the federal government conveys title to any portion of the public domain in this state, or in any other manner undertakes to exercise control over it, the statute in question becomes inoperative in so far as it conflicts with the authority of the federal government.

8, 9. It is next contended that the act is too indefinite to permit a criminal prosecution. In support of this contention several objections are urged. The first section of the act states that the use of water for watering live stock is declared to be a beneficial use. It provides

that such a right may be acquired in the same manner as the right to use water for other beneficial uses. Section 2 of the act provides that under certain conditions a right to appropriate water for the watering of live stock may not be acquired. Section 3 of the act provides · . that the state engineer, before approving an application to use water for watering live stock, shall determine that the right and use applied for will not contravene the policy of section 2 of the act, and that in a certain situation he may reject the application. Section 4 is quoted in full above. Section 5 provides that no vested right shall be affected by the act, while section 6 merely defines the terms "range live stock" and "public range."

While we do not think the question of the indefiniteness of the act can properly be considered in this character of a proceeding, we may say that there is no merit in the contention. Sections 1, 2, and 3 pertain to the acquisition of a right to water live stock, whereas section 4 is confined to defining what shall constitute a misdemeanor and in fixing the penalty.

10. It is further contended that the act is unconstitutional, because the title is not in accord with article 4, sec. 17, of our constitution which reads:

"Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title."

It is said that the title contains no reference whatsoever to range or grazing rights and privileges or to grazing of live stock upon the public domain, and that it refers solely to the use of water for watering live stock. It is a well-recognized rule that the constitutional provision in question must be given a liberal construction. State v. Ah Sam,. 15 Nev. 27, 37 Am. Rep. 454; McBride v. Griswold, 38 Nev. 56, 146 P. 756; First National Bank v. Nye Co., 38 Nev. 123, 145 P. 932, Ann. Cas. 1917c, 1195.

11. The contention must be rejected. In Ex Parte Ah Pah, 34 Nev. 283, 119 P. 770, the court had under consideration a title which read:

"An act concerning public schools, and repealing certain acts relating thereto." St. 1911, c. 133.

It was held that a provision in the body of the act prohibiting and penalizing the keeping of a house of ill fame within 800 yards of a schoolhouse did not make the act void, though the title of the act made no reference whatever to such houses. The act was upheld on the ground that the prohibition of the keeping of such house and the penalty thereof was matter properly connected with the subject of the act. The right to the use of water for watering live stock in this arid state depends for its value on the public range; hence we think the two matters are properly connected. The case which we have cited refers to the Nevada cases on the point, and we do not deem it necessary to review them.

12. It is further contended that the mere intent to graze cattle on the public range within three miles from a watering place, impressed with a subsisting right in another, is sought to be made a crime by the act in question, and hence no crime is created by the act, since, as it is said, there must exist in every crime a union or joint operation of act and intention. If we correctly understand the contention, we find no ground for its support. The act clearly provides that there must be a watering, plus the intention to graze live stock. If one grazes live stock within three miles of a watering place such as described in the act, but does not water his live stock there, no crime is committed. On the other hand, if he waters his live stock at such a place, but has no intention to graze within three miles thereof, there is no crime.

13, 14. The act in question is not violative of the provision of the constitution (article 4, sec. 21), requiring, "where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state." The act is general in its terms, applying to every person in similar circumstances, and it operates uniformly throughout the state. Nor is there merit in the contention that the law gives justices of the peace

jurisdiction of cases wherein the title to real estate is involved. State v. Rising, 10 Nev. 97.

While we have not considered the points made as presented, we have substantially disposed of them all.

It is ordered that these proceedings be, and the same are hereby, dismissed, and that the alternative writ heretofore issued be, and the same is hereby, discharged.