### ADAMS–McGILL CO. v. HENDRIX et al.
### No. 2577.

District Court, D. Nevada.
March 19, 1938.

Chandler, Quayle & Gill, of Ely, Nev., for plaintiff.

Brown & Belford, of Reno, Nev., for defendants.

NORCROSS, District Judge.

This is an action at law to recover the balance of the purchase price of certain property in pursuance of the terms of a written agreement for the sale and purchase thereof for a consideration of $20,000, payable in installments. By the terms of the agreement, upon making the initial payment and the deposit of the agreement in escrow, the defendant purchasers were entitled to possession. Defendants entered into possession and thereafter paid the next installment payment, but defaulted in the making of the third payment in the sum of $2,500, due October 1, 1932, hence, this action.

In addition to certain denials of plaintiff's allegations, for further answer defendants allege:

"That since entering into said escrow agreement between said plaintiff and these defendants marked plaintiff's Exhibit 1 and made a part of its complaint, these defendants have learned and now allege that contrary to the terms of said escrow agreement, the said plaintiff does not own and cannot comply with its said escrow agreement and deliver to these defendants the right to the use of the waters of Barrel Spring, the subject of Certificate No. 01415, filed in the State Engineer's Office, and South Summit Spring, the subject of Certificate No. 01416, filed in the State Engineer's Office as set forth in plaintiff's Exhibit 1, and does not own and cannot deliver to these defendants any right whatsoever to the use of the public range in connection with said springs last above mentioned."

"That the right to the use of said last mentioned springs and the right to the use of the public range in connection therewith constitute and are of such great value to the defendants as to render the remainder of the lands, springs and range rights described in said escrow agreement of little value to these defendants, and the consideration for said escrow agreement upon the part of the plaintiff has wholly failed."

Plaintiff, by its reply, denies the foregoing allegations. By an amendment to its answer defendants also deny ownership in plaintiff of Current Springs. The provisions of the agreement having a particular bearing upon the questions here presented are the following:

The parties "hereby agree with each other as follows":

"1. The vendor is the owner of the real property described in the schedule annexed to this agreement, marked 'Exhibit A', and hereby referred to and made a part hereof: * * *

"4. On the terms and conditions hereinafter set forth, the vendor agrees to sell and convey, and the purchaser agrees to purchase and pay for, all that certain real property described in said Exhibit A. * * *

"6. Immediately on the execution and delivery into escrow of this agreement, the purchaser shall enter into possession of the said real property, and shall have the use

and enjoyment thereof during the existence of this agreement. * * * He shall properly use and preserve from loss or forfeiture all water rights and forest grazing rights and/or permits, included in or used in connection with said real property or any thereof, and to that end shall comply with all laws and official regulations relating to any and all such rights and/or permits. * * * He shall use his best efforts to preserve the efficiency of the public range used in connection with said property. * * *

"10. This agreement * * * shall bind the heirs, personal representatives, successors and assigns of the respective parties.

"11. All of the terms of this agreement are herein set forth in their entirety. * * * and none of the terms hereof is to be supplemented or affected by any custom. * * *"

"Exhibit 'A'

"In Township Twelve North, Range Sixty-three East, M. D. B. & M.:

"Section Twenty-one: The Northwest quarter of the Northeast quarter thereof; * * *

"In Township Eleven North * * *.

"In Township Ten North * * *.

"Also all of vendor's rights in and to Fourth Sawmill Spring, situate in the Southwest part of the Northwest quarter of the Southeast quarter of Section Twenty-one, Township Twelve North, Range Sixty-three East, M. D. B. & M.; the subject of Certificate No. 859, filed in the State Engineer's Office of the State of Nevada, in Book 4, page 859;

"Adams Spring, the subject of Certificate No. 1163, recorded in the State Engineer's Office aforesaid, and in the office of the County Recorder of White Pine County, Nevada, in Book 97, page 344, of Miscellaneous Records;

"Barrel Spring, the subject of Certificate No. 01415, filed in the State Engineer's Office aforesaid;

"South Summit Spring, the subject of Certificate No. 01416, filed in the State Engineer's Office aforesaid;

"Currant Spring, the subject of Certificate No. 01486, filed in the State Engineer's Office aforesaid; * * *

(note—names of Eight other Springs in same form omitted).

"Jones Spring, the subject of Certificate No. 01879, filed in the State Engineer's Office aforesaid."

It is defendant's contention that: "The plaintiff warranted its title to the real property described in the schedule annexed to and made a part of the agreement set forth in Exhibit One attached to the complaint." This contention has its basis in the further contention that: "The plaintiff declared itself the owner of all the springs named in Exhibit 'A' except the spring called 'Fourth Sawmill Spring'."

■ The agreement contains no warranty of title. Upon the contrary, the parties agreed "with each other" that plaintiff "is the owner of the real property described in the schedule annexed to this agreement, marked 'Exhibit A'. * * *" The rule of estoppel appears to be applicable to a situation thus presented. Hoogendorn v. Daniel, 9 Cir., 178 F. 765; Knoch v. Haizlip, 163 Cal. 146, 124 P. 998; 21 Corpus Juris 1111, §§ 111, 114.

■ A reference to the schedule discloses that the land therein referred to is described as certain particular fractional portions of numbered sections, township, and range according to U. S. Surveys. But one of the fourteen springs referred to by name and certificate number is described in the schedule as being within a particular section of land and but one is referred to as having its certificate recorded in the office of the county recorder. We may assume that a right in or to a spring, whether the spring is upon land of the vendor or upon the public domain, is real property. Such a right, particularly for stock watering purposes for stock grazing upon the public domain, may be held by more than one individual or interest although usually but one interest controls. Because of natural conditions particularly, an arid mountainous region covering the major portion of the state's areas of more than 100,000 square miles, the state has recognized and provided for the protection of stockmen who have been first to make use of springs' and small water channels to enable them to graze their live stock in adjacent regions which, with the possible exception of mining, is not adaptable to any other use. Nevada Compiled Laws, 1929, §§ 7979 to 7984; In re Calvo, 50 Nev. 125, 253 P. 671; Steptoe Live Stock Co. v. Gulley, 53 Nev. 163, 295 P. 772.

When we come to that portion of the schedule in which springs are referred to as distinguished from land, we find no particular description of the amount of water representing the "vendor's rights" therein, or the amount of water produced or capable of being produced therefrom for stock watering purposes. If it were a case of the sale and purchase of upstream water rights for irrigation purposes for use in the reclamation of downstream irrigable lands, then a more particular description of the measurement of the water flow, so to be diverted, would be expected if not essential. With reference to the first spring named, the only description of the extent or quantum of the right or rights to be conveyed is "all of vendor's rights in and to Fourth Sawmill Spring."

Because the expression last quoted is not repeated preceding the names of the other springs following in the schedule, it is contended on behalf of defendants that plaintiff represented itself to be the sole owner of all other springs named. Independent of the provision of the agreement that parties thereto "agree with each other" that "the vendor is the owner of the real property described in the schedule," it is clear that the expression "all of vendor's rights" relates to each of the fourteen springs and not alone to the first named. While spelling and punctuation are not controlling in the construction to be placed upon a contract, where as here a contract appears to have been prepared with particular care; where, also, the vendors appear for a number of years to have had a particular knowledge of the general situation respecting both the land and grazing rights and privileges adjacent thereto, there is no reason presented for not holding that the intention of the parties at the time of entering into the contract was contrary to that indicated by the fact that the reference to each spring excepting the last named was followed by a semicolon instead of a period.

If there were any question respecting the construction as above stated of the schedule respecting the springs named, then we should turn to other provisions of the agreement to see if any expression therein might be of aid in the solution. The following from paragraph "6" quoted, supra, contains the following expression: "The purchaser * * * shall properly use and preserve from loss or forfeiture all water rights * * * included in or used in connection with said real property or any thereof. * * *" Some of the springs named were not upon land of which the vendor was owner. All the vendor could convey was any rights it had therein. The agreement further provides: "5. * * * (c) If the purchaser shall * * * fail to make any of said payments on the purchase price, with interest, on or before the time when such payment shall become due, the entire purchase price then remaining unpaid shall immediately become due and payable; or. * * *"

Plaintiff is entitled to judgment for the balance of the purchase price, as prayed for. Loud v. Pomona Land & Water Co., 153 U.S. 564, 14 S.Ct. 928, 38 L.Ed. 822; Michigan Home Colony Co. v. Tabor, 8 Cir., 141 F. 332; Griffin v. American Gold Min. Co., 9 Cir., 123 F. 283; 66 C.J. 1351.

It is so ordered.